IRENE CHANDLER,

*Plaintiff and Respondent,*

vs.

DONALD R. DUGAN,

*Defendant and Appellant.*

(No. 2558; December 9th, 1952; 251 Pac. (2d) 580)

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of Paul B. Lorenz, of Cheyenne, Wyoming.

For the defendant and appellant the cause was submitted upon the brief of Loomis & Lazear, of Cheyenne,

Wyoming, and also oral argument of Mr. Edward T. Lazear.

444

## OPINION

ILSLEY, Justice.

This is a case where the plaintiff, Irene Chandler, was injured in a headon automobile collision. Plaintiff was riding with her husband, Horace E. Chandler, the driver of one automobile which collided with an automobile driven by the defendant and appellant, Donald R. Dugan, at a street intersection in the City of Cheyenne. The case was tried to a jury resulting in a verdict in the sum of $18,715.15. A judgment was entered in that amount and defendant appeals.

Plaintiff sets forth in her petition that on the 16th day of December, 1949 at 9 o'clock P.M., on west 16th Street, in the City of Cheyenne, while riding in an automobile owned and driven by her husband, Horace E. Chandler, and proceeding easterly on west 16th Street and when about to turn north at the intersection of west 16th Street and Snyder Avenue, the defendant, who was driving an automobile in a "westerly direction on west 16th Street collided with and struck the automobile being operated and driven by Horace E. Chandler in which plaintiff was riding." It is alleged that the automobile being driven by the defendant at the time of the collision was operated by him in a careless, negligent, wanton, unlawful and reckless manner in his failing to have the automobile under proper and reasonable control so as not to endanger the life and property of plaintiff; in operating the automobile at a high, unlawful, dangerous and excessive speed, i.e. 50 miles per hour, greater than reasonable and prudent under the conditions there existing; in failing to keep the automobile under adequate and proper control; in operating the automobile at such excessive speed it could not be stopped within the assured clear distance ahead; in failing to keep a proper lookout for vehicles upon the street before him and in failing to discover the automobile driven by the plaintiff's husband in time to avoid the collision and resulting damage to plaintiff; when by careful, prudent action on his part he could have controlled his automobile so as to have avoided running into and injuring plaintiff after he discovered, or by the exercise of ordinary care, should have discovered that plaintiff and the automobile in which plaintiff was riding were in a place of danger; in failing to properly steer, control and stop the automobile and in violating the provisions of Sec. 60-501 W.C.S. 1945 and Sec. 18-501-902-903 of the Ordinances of the City of Cheyenne governing the operation of

automobiles. That by reason of the foregoing it is alleged the plaintiff suffered injuries and damages to the extent of $50,509.15.

To this petition defendant, by his Amended Answer, entered a General Denial except he admits the collision at the time and place alleged and that plaintiff was a passenger in the automobile owned by Horace E. Chandler, being driven by him in an easterly direction and that defendant Dugan was driving along west 16th Street at the time of the collision. For a second defense defendant alleges that plaintiff and Horace E. Chandler were cooperating in a joint enterprise at the time of the collision; that the sole and proximate cause of plaintiff's injuries was the negligence of her husband, Horace E. Chandler, in commencing a U turn some 75 or 100 feet west of Snyder Avenue on west 16th Street and after completing the U turn "crashed headlong into the car of the defendant on the left-hand side of the street." For a third defense it is alleged that the sole and proximate cause of the collision was the negligence of plaintiff in failing to look back along the highway when she could have seen the automobile of defendant approaching and in failing to notify her husband, the driver, so that he could avoid the collision.

For a fourth defense it is alleged that the negligent conduct of the driver, the husband, in making a U turn between intersections from a point off the highway onto and into the wrong lane of traffic was imputed to the plaintiff who was riding with him and who knew, or should have known of her husband's proposed negligence and who was then and there charged with the duty of warning him and admonishing him not to continue in such a negligent manner. The reply to all defenses was a General Denial.

Defendant and appellant sets forth five specifications of error. The first four having to do with; (1) motion

for directed verdict at close of plaintiff's case; (2) motion at close of all the evidence for directed verdict; (3) the entry of the judgment for $18,715.15; (4) motion for judgment notwithstanding the verdict, all of the foregoing on the ground that there was insufficient evidence and that the ruling of the court was contrary to law and the evidence. The fifth specification of error states that there was error in overruling defendant's motion for a new trial because of irregularity and misconduct of the prevailing party, that the damages were excessive, given under the influence of passion and prejudice; that there was newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced on trial.

Briefly stated, the evidence establishes the following facts and circumstances: Defendant was alone in his car driving west on west 16th Street at about 8:55 P.M. on December 16, 1949. "I was going at a reasonable rate of speed—about 25 or 30 miles per hour." As he came over the hill, which lies east of Snyder Avenue, he could see the road ahead and the intersection of the streets, west 16th and Snyder Avenue. He first saw the Chandler car as he entered the intersection of Snyder Avenue and 16th Street. Before that defendant hadn't seen a car in either lane of traffic. The first thing defendant saw, "was the lights on this oncoming car just directly in front of me. Upon seeing those I applied my brakes, tried to turn left, which would be south into the center of the road. This car, it seemed to be when it was coming away—this is my car (indicating); I am going west. As I say, this is my car (indicating). The car was coming directly towards me but it seemed as if it was coming toward my right side, in my lane of traffic."

"You, as a matter of fact, then know nothing about Mr. Chandler's course of driving?" "No, I don't, I am sorry to say." The only time defendant saw the Chandler car was just at the point of impact of collision. When asked, "where do you think he came from?" he answered, "That beats me."

It is agreed that the point of collision is at a point 25 feet from the north curb line of 16th Street directly in line with an extension of the west curb line of Snyder Avenue, the cars having collided at that point. Other testimony shows that the point of impact on a north-south line is about 7 feet north of the center line of 16th Street. Photographs Exhibit 3 of plaintiff's car and Exhibit 2 of defendant's car both show more damage on the right side of each car than on the left side. The photographs indicate that the collision was headon.

Harold Chandler testified that he was driving his own car, his wife, the plaintiff, beside him in the front seat and a Mr. Dewey sitting beside plaintiff. West 16th Street is approximately 63 feet wide. Chandler started driving from a point in front of a grocery store on the north side of west 16th Street, about 80 to 100 feet west of the intersection of Snyder Avenue and west 16th Street, turned left or south to south side of the center line of west 16th Street, driving east and then northerly with the intention of going north on Snyder Avenue at a speed of about 5 to 10 miles per hour, in low gear. Chandler states that when he started from the point mentioned he first saw, "the blur of his (defendant's) lights * * approximately 350 to 400 feet" away. He figured he had time to make the turn, held out his hand preparatory to turning three car lengths from the intersection. Chandler did not see any other cars or pedestrians and it did not occur to him there would be a collision until his wife hollered, "watch out, that man is going to hit us." He then

threw on the brakes and "in the collision I was practically stopped." He didn't realize Dugan was going so fast. Dugan was coming from the east, headed west. Chandler estimated defendant's speed from 50 to 60 miles per hour. He saw the lights on defendant's car as defendant came closer. He states the collision happened as he was trying to get out of the way. Dugan was going very fast.

"Q. You said he was going 50 or 60 miles an hour when you (Chandler) first saw him. How would you know all those things, he was going 50 or 60 miles an hour

"After the accident when he hit me, I knew for sure."

Chandler says he was either going very slow or was completely stopped at the time of the accident. After the accident Ray Palmer, a traffic officer of the Cheyenne police force, made a report of the accident and among other things stated: "With regard to tracks caused by braking or skidding, there was a skid mark on the pavement 15 feet in length from its start to the front wheels of the Dugan car and there was no physical skid marks caused by the Chandler car."

The day after the accident Chandler made a statement in writing to the police of Cheyenne in which he stated: "I had made my turn and was going east on 16th St. but was in the north lane of Traffic. I never saw the westbound car on 16th St. and we collided headon. I had my headlights on. I never saw the other car at all and don't know where he came from."

This statement was at variance with his testimony at the trial and in explanation Chandler asserts: That the statement made was incorrect, and that he (Chandler) did not tell the man who took the statement the

matters set forth in the statement but objected to them and was told that such matters would be corrected.

The foregoing is a summary of what happened as told by the defendant and Chandler, each of whom drove an automobile involved in the accident. They are the principal witnesses and should know how the accident occurred. The case was tried in December, 1951, nearly two years after the collision.

The plaintiff was 43 years of age at the time of the accident and without dispute Dr. Pennoyer testified she had a basilar skull fracture and had a fracture of one of the vertebra in her neck and an injury to the ears which made hearing impossible at the time of the accident. She had a fracture of the left lower leg; hearing was completely lost in one ear at the time of trial; had lack of coordination; was 40 days in a hospital; there was some improvement at the time of trial. The hospital bill amounted to $715.65.

In the making of an analysis of the evidence in this case we must do so in the light of the approved appellate practice of the various courts throughout this country and in accord with what this court has said in that regard many, many times. That is to say: "In the first place the credibility of the witnesses and the weight of their testimony are for the jury alone to determine." Brown vs. Butane Gas Co. 66 Wyo. 67, 205 P. (2d) 116. Then we must adhere to the rule set forth in Dulaney vs. Jensen 63 Wyo. 313, 181 P. (2d) 605, where we: "must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

When error is claimed as in this case by appellant, in the denial by the trial court of motions for a directed verdict this court has said: "Again, a motion for judgment at the close of plaintiff's case is in the nature of a demurrer to plaintiff's evidence, and admits its truth," for the purpose of the motion. Boyle vs. Mountford 39 Wyo. 141-147, 270 P. 537. Where there is conflicting evidence it is for the jury to decide and it is error for the court to direct a verdict. Weaver vs. Richardson 21 Wyo. 158-163, 129 P. 829. If it is necessary to set forth additional reasons to sustain the foregoing propositions of law, we find them in the record of the testimony in this case. To illustrate: a map showing the intersection at Snyder Avenue and west 16th Street was made by a surveyor and was admitted in evidence without objection. Witnesses testified by referring to the map. We refer to one instance and set forth a verbatim record of Mr. Chandler's testimony taken from the official transcript which shows the following:

"Q. At the time of the collision with reference to north and south, this way (indicating) and east and west, about what direction was your car pointing? Can you show that? Draw a little picture of the car there if you are able.

A. Prior to the time of the collision?

Q. No, right at the time of the collision, if you know. In other words, with reference to the compass was your car this way, this way, or where?

A. Well, I believe about the time I figure—

Q. (Interposing) As near as you know.

A. It was all like this (indicating), to some extent.

Q. Just draw it in there heavy.

A. Like that (drawing).

Q. That is as near as you recall. Was this—

MR. LAZEAR: (Interposing) Is this the car before the accident or right at the impact?

MR. LORENZ: Right at the impact as he recalls.

Mr. LAZEAR: Well, he has got it wrong.

Q. (By Mr. Lorenz) Right at the impact—just before the impact how was your car, this way or this way with reference to the compass (indicating)?

A. I believe it was that way to a certain extent for the simple reason I tried to pull out prior to the accident."

Now the trial judge, the jury, counsel and the witness who were there when Mr. Chandler testified could see, hear, and understand the witness's testimony. To us, much of this evidence is meaningless as we look at and read the cold record. We are unable to find "a little picture of the car" on the map which the witness was asked to draw. When counsel asks: "In other words, with reference to the compass was your car *this way, this way, or where?*" and when the witness answered: "It was all like this (indicating) to some extent", the situation leaves us in a state of bewilderment. So there is good reason to follow the rules of the law above set forth when we review and analyze all of the evidence introduced on trial.

While appellant alleged in his amended answer that the plaintiff and her husband, Horace E. Chandler, the driver of the automobile, were engaged in a joint enterprise and that Chandler was guilty of acts of negligence which proximately caused the accident and which acts of negligence were imputed to the plaintiff, it appears that there was no proof of such an enterprise. Further, that if defendant had seriously intended to rely on contributory negligence as a defense when he filed his pleading, it was later abandoned. The trial court gave the following instruction to the jury: "You

are instructed that any negligence of the driver of the Chandler car, that is, plaintiff's husband, Mr. Chandler, shall not be imputed to the plaintiff." There was no objection to this instruction by the defendant and no exception allowed. No instruction was offered setting forth any theory of imputed negligence on behalf of the defendant, Dugan.

Figuratively speaking, the plaintiff was in the position of a person being injured as an innocent bystander. Mrs. Chandler was not engaged in a joint or common enterprise with her husband. Neither did she have any control over the car in which she was riding. Under these circumstances the authorities are in agreement that if she is injured by the concurring negligence of the driver of her car and some third party, the negligence of her driver is not imputable to her so as to prevent a recovery for damages from such third party. See Annotation Imputing Drivers Negligence to Passenger. 90 A.L.R. 631. This is true, even though the driver of the automobile is the husband of the injured party riding with him, as was the plaintiff in this case.

As set forth in 5 Am. Jur. 784, § 498:

"The general rule that as between the driver of an automobile and a passenger therein, the negligence of the former is not imputable to the latter so as to bar recovery against a third person whose concurrent negligence caused an injury to the occupant, is not changed by the fact that the occupants of the automobile are *husband* and *wife*. In the absence of some control or authority over the operation of the car by the wife, the negligence of a husband in driving a motor vehicle is not imputable to his wife, who is riding with him as a passenger and will not, where damages for personal injuries to a wife are her own separate property and are recoverable by her without joining her husband in the action, prevent her from holding a third person liable for injuries incurred by reason of the concurring negligence of her husband and such third

person. * * * * It is only when the husband is acting as agent for the wife in the matter at hand or when they are engaged in a joint or common enterprise and participate jointly in the operation of the automobile that the negligence of the one driving the automobile becomes contributory negligence on the part of the other and defeats recovery against a third person.

"The mere fact that the automobile in which the plaintiff was riding when injured was being driven by a relative does not take the case out of the general rule that the driver's negligence is not attributable to a passenger."

Therefore there is no question of contributory negligence on the part of Chandler, the driver, which would bar plaintiff's right to recover from the defendant, Dugan. As said in 65 C.J.S. 639, Topic Negligence Sec. 102:

"If the concurrent negligence of two or more persons combined results in an injury to a third person, they are jointly and severally liable and the injured person may recover from either or all."

Citing Phelps vs. Woodward Const. Co. 66 Wyo. 33, 204 P. (2d) 179 and Hester vs. Coliseum Motor Co. 41 Wyo. 345, 285 P. 781. In Phelps vs. Woodward Const. Co. 66 Wyo. at page 55, this court cites with approval the statement in Prosser on Torts, p. 324:

"If the defendant's conduct was a substantial factor in causing the plaintiff's loss, it follows that he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result."

"If the original wrongdoer 'could have anticipated that the intervening act of negligence might, in a natural and orindary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.' Shearman & Redfield on Negligence, Rev. Ed. Section 38. See also Vol. 2, Restatement of the Law of

Torts, Sections 439 and 447; Harper on Torts, Section 123; Carpenter in 16 So. Cal. Law Review, 304-307."

In Hester vs. Coliseum Motor Company, supra, where there was an action for the death of an automobile guest, if there was any negligence by the automobile driver, it could not be imputed to the guest who was riding in the back seat because the negligence of the driver of the automobile is not imputable to the guest, who has no control or power over the driver in the operation of the automobile. This court, in commenting on the situation there presented had this to say, in referring to this rule of law:

"So far as it is concerned, the plaintiff must be held entitled to recover if the negligence of the Dodge truck driver, if any there was, proximately caused or contributed to cause the death of plaintiff's intestate, even though the alleged negligence of Gidley, the driver of the Hudson automobile, also contributed to cause that death. In other words, 'where injury results from the separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are the proximate cause and recovery may be had against either or both of the responsible persons.' See also Dewees vs. Kuntz (Cal. App.) 280 Pac. 552; Dow v. Sunset etc. Co. 162 Cal. 136, 121 Pac. 379; Sullivan 789, 132 S.E. 844; Sif v. The O'Neal Co., 17 O. App. 216 there cited."

The defendant states that the plaintiff pleads and relies upon the doctrine of the last clear chance. Even so, it has no application in this case. Here negligence is not imputed to the plaintiff. There is no contributory negligence on the part of the plaintiff. As stated in 61 C.J.S. 123, Sec. 493 (2d):

"The last clear chance doctrine has been held to have no application where the injured person has not been placed in the position of danger by his own negligence."

See also Prosser on Torts, p. 408, Sec. 54; O'Malley vs. Eagan 43 Wyo. 233, 2 P. (2d) 1063; Rienecker vs.

Lampman 55 Wyo. 159, 96 P. (2d) 561; Johnston vs. Vukelic 67 Wyo. 1, 213 P. (2d) 925.

The defendant insists that by reason of the physical facts occasioned by the accident it was "utterly and inconceivable and impossible" for the accident to have happened as related by the witness. We think that the jury in this case was in a much better position than this Court to weigh the evidence and to decide who was proximately responsible for the accident. Even though the acts of negligence were nicely balanced as between Dugan and Horace E. Chandler nevertheless, as we view the situation, the plaintiff can recover because, as we have seen, no negligence is imputed to her.

Defendant says that he did not see the Chandler car at the intersection until just before the impact. Evidently it was then too late to avoid a collision. The defendant, under the law, is not permitted to say that he did not see when he could have seen by looking. As this Court has said: "A person is presumed to see that which he could see by looking. * * * He will not be permitted to say that he did not see what he must have seen had he looked." Chapman v. Ewing 46 Wyo. 130-136, 24 P. (2d) 687; Autio vs. Miller (Mont.), 11 P. (2d) 1039; Galicich vs. Oregon Short Line 54 Wyo. 123, 87 P. (2d) Huddy Automobile Law Vol. 3-4 Sec. 49, p. 91. See also the case of Hawkins vs. Loffland Bros. recently decided by this Court on the 18th day of November, 1952.

Defendant and appellant in complaining of the trial court's action in overruling his motion for a new trial states that, "there was irregularity and misconduct of the plaintiff and that the damages were excessive and given under the influence of passion and prejudice." We assure able counsel that we have gone over the record in this case carefully and we are unable to agree with this contention. We have set out in some detail

the injuries by the plaintiff, which were severe. We cannot say that the damages were excessive or unreasonable. Again the jury was in a better position to say who was proximately responsible for the accident and having weighed the evidence and judged its worth, the jury was capable of assessing the damages.

With respect to the failure of the trial court in considering appellant's showing of newly discovered evidence sufficient to warrant the granting of a new trial we have this to say: It must be remembered that due and reasonable diligence must be exercised on the part of the appellant before a motion for a new trial will be granted. We think that the Wyoming cases which announce this principle are in accord with the rule in other jurisdictions. This Court in that respect in the case of Durham vs. State 29 Wyo. 85-97 has this to say:

"It is a principle of law, firmly established, that a new trial will not be granted because of newly discovered evidence, where the party seeking it does not show that he exercised due and reasonable diligence in attempting to procure the evidence in time for use at the trial. (12 Cyc. 737; 29 Cyc. 886; 20 Standard Ency. of Proc. 567; People v. Lim Foon 29 Cal. App. 270; 155 Pac. 477; Talley v. State, 18 Ariz. 309, 159 Pac. 59.) And this is so, even though the defendant is confined in jail, at least unless it appears that there was no outside assistance available. (Gordon v. State, (Tex. Crim.) 224 S. W. 894.) The applicant for a new trial should make reasonable inquiry, where necessary, before the trial to learn what persons were present at the time of the occurrence in question (29 Cyc. 892), and if the facts sought to be shown by the new witness could have been shown at the trial by other witnesses, then the finding of such new witness will not furnish a ground for a new trial. (Grozier v. Cooper, 14 Ill. 139; Hanley v. Life Ass'n., 69 Mo. 380; Slattery v. Supreme Tent, 19 Pa. Super. 108; Dyk v. De Young, 133 Ill. 82, 24 N. E. 520; 20 Standard Ency. Proc. 569-570.)

"No showing whatever has been made in the case at bar, that any diligence was used in discovering the evidence in question, although substantially two months intervened between the arrest of defendant and the time of her trial."

See also 39 Am. Jur. 167 § 160; Demple vs. Carroll 21 Wyo. 447-457, 133 P. 137; Chicago & N. W. Ry. Co. vs. Ott 33 Wyo. 200-218, 237 P. 238; Hardendorf vs. Gafner 53 Wyo. 427, 84 P. (2d) 719.

We find that the accident took place on the night of December 16, 1949. The trial of the case started on the 5th of December, 1951. Nearly two years had intervened between the date of the accident and the trial of the case. We have read the affidavits of appellant in support of the motion for a new trial as well as the counter affidavit of the respondent and it seems to us that the appellant had ample time to procure all of the necessary facts for his defense to this action. For instance, Mrs. Chandler, the plaintiff, was not cross-examined while on the witness stand as to her injuries. If, as alleged, she overemphasized her injuries appellant had a long time to ascertain her physical condition. Mrs. Chandler could have been examined by a physician of appellant's own choosing at any time during the period after the accident and before the trial. This was not done.

It is contended by appellant, supported by affidavits, in connection with his motion for a new trial that after the trial of the case it was discovered that the witness, Jack Levine, could not have seen from where he was standing the automobiles as they were approaching the intersection just immediately before the headon collision. This is flatly denied by affidavit. The trial court having heard all of the evidence at the time of the trial and being in a better position to judge the value of the affidavits submitted in connection with the

motion for a new trial, we cannot say that the court erred in overruling the motion. In any event, Levine's testimony would only tend to corroborate the testimony of Horace E. Chandler on the question of negligence and, as we have heretofore said, contributory negligence on the part of Chandler, the driver of the automobile in which the plaintiff and respondent was riding, does not bar her right to recover from the defendant and appellant. The judgment of the trial court will be affirmed.

*Affirmed.*

BLUME, C. J. and RINER, J., concur.

## ON PETITION FOR REHEARING

An application for rehearing was filed in this case and was denied without Opinion on February 17th, 1953.