HERBERT R. TYLER, JR.,

*Plaintiff and Appellant,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; KEYES TANK COMPANY, a Utah corporation; LESTER DUNN; and WILLIAM M. PERKINS,

*Defendants and Respondents.*

HERBERT R. TYLER, JR.,

*Plaintiff and Respondent,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; LESTER DUNN, and WILLIAM M. PERKINS,

*Defendants and Respondents,*

and

KEYES TANK COMPANY, a Utah corporation,

*Defendant and Appellant.*

HERBERT R. TYLER, JR.,

*Plaintiff and Respondent,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; KEYES TANK COMPANY, a Utah corporation; and LESTER DUNN,

*Defendants and Respondents,*

and

WILLIAM M. PERKINS,

*Defendant and Appellant,*

BETHEL CATHERINE TYLER,

*Plaintiff and Appellant,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; KEYES TANK COMPANY, a Utah corporation; LESTER DUNN; and WILLIAM M. PERKINS,

*Defendants and Respondents.*

BETHEL CATHERINE TYLER,

*Plaintiff and Respondent,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; LESTER DUNN, and WILLIAM M. PERKINS,

*Defendants and Respondents,*

and

KEYES TANK COMPANY, a Utah corporation,

*Defendant and Appellant.*

BETHEL CATHERINE TYLER,

*Plaintiff and Respondent,*

vs.

RULON JENSEN, doing business as Rulon Jensen Trucking Company; KEYES TANK COMPANY, a Utah corporation; and LESTER DUNN,

*Defendants and Respondents,*

and

WILLIAM M. PERKINS,

*Defendant and Appellant.*

(Nos. 2709 to 2714, inc., April 10th,1956;295 Pac. (2d) 742)

For the plaintiffs who are both appellants and respondents the causes were submitted upon the briefs of Magagna, Galicich and Hamm of Rock Springs, Wyoming, and oral argument by Edwin V. Magagna and Kenneth G. Hamm.

For the defendant and appellant William M. Perkins the causes were submitted upon the briefs of R. Dwight Wallace of Evanston, Wyoming, and Edwin B. Cannon of Salt Lake City, Utah, and oral argument by Edwin B. Cannon.

For the defendant and appellant Keyes Tank Company the causes were submitted upon the briefs of Greenwood and Ferrall of Cheyenne, Wyoming, and oral argument by Bard Ferrall.

For the defendant and respondent Rulon Jensen the causes were submitted upon the briefs and also oral argument of Albert E. Nelson of Rock Springs, Wyoming.

## OPINION

SHELDON, District Judge.

Herbert R. Tyler, Jr., accompanied by his wife, Bethel Catherine Tyler, was driving his Ford automobile west on U. S. Highway 30 approximately 52 miles west of Rock Springs, Wyoming, when he became involved in a three-vehicle accident at about 9:00 a.m. on March 20, 1952.

The Ford was being followed at a short distance by a large Mack tractor-trailer unit owned by Rulon Jensen of Ogden, Utah, and doing business as Rulon Jensen Trucking Company. Martin D. Klinke, designated as driver, and Lester C. Dunn, designated as alternate driver, were employee-operators of this unit, and at the time of the accident Dunn was at the wheel and Klinke was resting in the sleeper behind the cab. The truck was under lease to Keyes Tank Company, a Utah corporation, of Provo, Utah, and had just been used by that company to haul a load of its metal pro-

ducts from Provo to Salina, Kansas. At the time of the accident the unit was being returned from this trip with a heavy load of milo maize purchased at Oakley, Kansas, by Klinke under the orders and directions of Rulon Jensen for his use and benefit.

William M. Perkins of North Hollywood, California, was driving a Cadillac automobile east on said highway accompanied by his wife, Anna Perkins, and Darlene Gibson when his car collided head-on with the Ford. The tractor-trailer unit, traveling at about 20 miles per hour, was about 150 feet behind the Ford at the time the two cars came together, and Dunn, being unable to stop or control his vehicle because of the snow and slippery condition of the highway, ran into the rear end of the Ford. The weather was bad; it had been snowing intermittently during the morning and a strong wind was blowing, causing a ground blizzard which at times reduced the visibility to zero. Tyler and Perkins were unable to see each other until their cars were about 50 feet apart and, although neither car was traveling fast, they were unable to stop or avoid the collision. The testimony of Tyler and Dunn placed the Cadillac in the westbound lane of traffic at the time of the accident, and Perkins testified he did not know where he was in relation to the road.

As a result of the accident both Mr. and Mrs. Tyler were severely injured and the Ford demolished. The Tylers brought separate actions in the District Court of Sweetwater County, each joining Rulon Jensen, Keyes Tank Company, Lester Dunn and William M. Perkins as defendants. Their respective second amended petitions are identical, excepting as to the allegations of damages, and charge that the defendants Perkins and Dunn both operated their respective motor vehicles negligently, thereby causing them to collide with the Ford either simultaneously or almost simultaneously, resulting in the injuries complained of.

Lester Dunn is alleged to be the agent, servant and employee of both Rulon Jensen and Keyes Tank Company. The cases were consolidated in the District Court for trial and tried to a jury, resulting in a verdict and judgment in each case in favor of the plaintiff and against the defendants Perkins and Dunn jointly and severally and against Keyes Tank Company jointly and severally with Perkins and severally with Lester C. Dunn, and a verdict and judgment in each case in favor of the defendant Rulon Jensen and against the plaintiffs respectively.

Six separate appeals have been filed in this court from the verdicts and judgments of the District Court. Both plaintiffs have appealed from the verdict and judgment in favor of the defendant Rulon Jensen in their respective cases. The defendant William M. Perkins has appealed from the verdict and judgment against him in favor of the plaintiffs in each case. The defendant Keyes Tank Company has appealed in each case from the verdict and judgment, both against them and in favor of Rulon Jensen. The defendant Dunn has not appealed. All appeals were consolidated in this court for hearing and will be disposed of in this one opinion. No issue is raised on appeal as to the amount of damages awarded the plaintiffs.

The defendant Perkins contends that his motion for a directed verdict should have been sustained because: (a) his alleged negligence, to-wit, "driving on the wrong side of the highway" is inconsistent with the established physical facts proved upon the trial, and therefore, the testimony of Tyler and Dunn placing his car in the westbound lane of traffic should be disregarded by the court; (b) plaintiffs' damages were caused by the negligence of Dunn, which was an independent intervening cause which could not have been reasonably anticipated or foreseen by Perkins; and (c) the evidence fails to establish concurrent neg-

ligence on the part of the several defendants and, therefore, separate actions are improperly joined. Perkins also contends that the trial court did not properly instruct the jury as to the law applicable to his theory of the case.

An examination of the record discloses that ample evidence was introduced upon the trial of this case to sustain the jury's finding of negligence on the part of defendant Perkins. Perkins testified that he met two snow plows traveling west about a mile apart, the second of which he had just passed immediately prior to the accident, and that it was a snow flurry from this plow which temporarily blinded him so that he could not see the Ford until he was only 45 to 50 feet from it. After the accident the Cadillac came to rest well over the center line on the south side of the highway. Perkins' counsel argue that this evidence definitely placed the Cadillac on the south side of the highway at the time of the accident. Counsel ignore the testimony of both Tyler and Dunn that neither saw a snow plow ahead of them on the highway, from which testimony the jury might well have assumed that Perkins was mistaken in point of time as to when he passed the snow plow and concluded that he had ample opportunity and would naturally be inclined, after passing the snow plow, to move over onto the cleared portion of the road and into the westbound lane of traffic. Counsel also ignore Perkins' testimony to the effect that he did not know where he was in relation to the road or if he was on the wrong side of the road and that ground blizzards were generally prevalent at the time, reducing visibility to zero. Perkins also testified that his car was pushed back at a forty-five degree angle at the time of the second crash when we heard a lot of scraping and dragging. Perkins admits that after the collision between the Ford and the Cadillac these cars stopped bumper to bumper.

It also appears from the evidence that Tyler drove as far to the right as the snow bank on the north side of the road would permit in an effort to avoid the accident, and that after the accident the Ford came to final rest well over on the north side of the highway.

Plaintiffs' second amended petitions allege that their respective injuries were caused by the concurrent but separate and detailed acts of negligence of the defendants Perkins and Dunn. The general denials of both Perkins and Dunn put this matter in issue, and Dunn specifically pleads that the injuries were caused by the independent intervening acts of negligence of Perkins which could not have been reasonably anticipated or foreseen by Dunn. The case was tried and submitted to the jury on these issues, and under the court's instruction defining and distinguishing between concurrent and intervening negligence the jury returned a verdict finding Perkins and Dunn guilty of concurrent negligence. This verdict will not be disturbed by this court if it is supported by any competent evidence. Chandler v. Dugan, 70 Wyo. 439, 251 P. 2d 580; Dulaney v. Jensen, 63 Wyo. 313, 181 P. 2d 605.

While the evidence in this case is conflicting in many details, the jury could fairly have construed and summarized it as follows: Perkins was negligent in driving on the wrong side of the highway at a time when wind-driven snow reduced visibility to zero and the road was snowy and slippery. Dunn was negligent in following the Ford with his tractor-trailer unit, weighing some 67,000 pounds, at a distance of only 150 feet under said prevailing weather and road conditions. These separate acts of negligence were continuing and simultaneous. The Cadillac approaching from the west forced the Ford to slow down and stop in the path of the oncoming truck. Poor visibility made it impossible for the driver of either car to see the other car until it was too late to avoid the collision, and the slip-

pery pavement prevented Dunn from controlling or stopping his truck so as to avoid the ensuing collision. As a result the Tylers were caught between the two separate converging and continuing acts of negligence, and it made no difference in the end result whether the original contact made between the Ford and Cadillac was slight or none at all. The fact remains that the negligence of Perkins caused the Ford to stop in the path of the immediately oncoming truck, with the resulting damage and injuries to the plaintiffs.

Counsel for both Perkins and the plaintiffs cite numerous authorities on both sides of the question of intervening cause. It would prolong this opinion unduly to attempt to resolve or distinguish the cases cited from the case at bar. Suffice to say that in matters of this kind the facts and circumstances must be analyzed in the light of the general rules applicable, and in the final analysis the question is one for the determination of the jury under proper instruction from the court. The general rule is stated in 60 C.J.S. § 255, p. 621, as follows:

"Where a chain of events has been started, due to the negligence of the driver of an automobile, he may be held liable for all mishaps which are properly the proximate result of his improper conduct. The mere fact that some other cause or causes have intervened between the negligent act and the injury does not insulate the negligence, or make it a remote cause without liability, unless the intervening cause is a new and independent force, or an efficient intervening cause, which breaks the causal connection between the original negligence and the injury. An intervening act is not regarded as breaking the causal connection where it could reasonably have been foreseen by the original wrongdoer as a probable consequence of his negligence or is a normal response to the stimulus of the situation created thereby."

The case of Luis v. Cavin, 88 Cal. App. 2d 107, 198 P. 2d 563, 568, is illustrative of the above rule and is

particularly applicable to the facts in this case. In that case the defendant, Silva, traveling south, negligently stopped his truck in a four-lane underpass causing three vehicles, driven respectively by McKenzie, Vierra and Morrow, to pile up behind him, some of which collided and came to rest in the northbound lane of traffic. About fifteen minutes later Luis, traveling north, ran into one of these vehicles and was killed. In sustaining a verdict against the defendant, Silva, the court said: "Gauging his conduct in the light of all the surrounding circumstances, his admitted knowledge of the highway curving as it did in entering and leaving the underpass, the truck carrying a harvester, the top of which was 17 feet high, and over the prescribed height limit, the failure to place flares and the failure to move the truck, we cannot say as a matter of law that the jury was not justified in finding as it did. Silva as a reasonably prudent man may be held to have foreseen that as a part of the risk of such negligent conduct other vehicles might collide in attempting to pass his truck so parked on the highway. Therefore it cannot be said that the failure of defendant McKenzie to remove his truck was such an intervening act that it relieved defendant Silva of the consequences of his own negligence. Mosley v. Arden Farms Co., 26 Cal. 2d 213, 157 P. 2d 372, 158 A.L.R. 872. Nor was the alleged negligence of Vierra and Morrow an intervening act relieving Silva of the consequences of his own negligence, since as stated in the case last cited 'what occurred was reasonably foreseeable, and should have been anticipated.' 26 Cal. 2d 218, 157 P. 2d 374. As to the alleged contributory negligence of the decedent constituting an intervening act it is sufficient to state that the verdict implies that the jury, upon proper instructions, did not find as a matter of fact that the decedent was so negligent."

The defendant Perkins offered 21 jury instructions all of which were refused by the trial court. It appears that every point of law covered by these instructions applicable to the issues and the evidence in this case are included in the instructions given by the court.

It is true that the court's instructions are couched in more general terms than the defendant's instructions, and doubtless the jury might have more readily understood the court's instructions and applied the law therein contained to the facts in the case if they had been phrased more specifically to apply to the issues in the case. Counsel for the defendant, however, has failed to point out any instruction which is an incorrect statement of the law applicable to the issues in this case or in any way misleading to the jury. On the other hand, the wording of each of the defendant's offered instructions are either repetitious or tend to be misleading either as to the issues or the application of the law to the facts. We do not believe that any reversible error was committed by the trial court in refusing to give any of defendant's offered instructions.

The court correctly denied Perkins' motion for a directed verdict, and the judgment of the court in favor of each of the plaintiffs and against the defendant Perkins is sustained.

The liability of the defendants Rulon Jensen and Keyes Tank Company in this case is based upon the doctrine of respondeat superior, and the appeals of the plaintiffs and of the defendant Keyes Tank Company from the judgment in favor of Rulon Jensen raised the question as to whom Dunn was working for at the time of the accident. The facts surrounding Dunn's employment and the use of the truck are not in dispute and, concisely stated, they are as follows:

Rulon Jensen was a truck owner and operator and his principal business was the transportation of metal products for the Keyes Tank Company, which was engaged in the business of manufacturing metal tanks. Jensen did not have interstate authority to operate his trucks, so in order to comply with I.C.C. regulations he leased his equipment to Keyes Tank Com-

pany on a yearly basis. Such a lease was executed by the parties covering the equipment involved in this accident on October 10, 1951, of which the following is a copy:

## "LEASE AGREEMENT

"This lease agreement entered into by and between the Keyes Tank Company, a corporation, doing business at Provo, Utah, and Casper, Wyoming, lessee, and Rulon K. Jensen, 2139 Ogden Avenue, Ogden, Utah, lessor,

## ''WITNESSETH

"That lessor does by these presents lease unto the lessee, and the lessee does hereby lease from the lessor, the following described equipment:

"One Mack Truck tractor, Motor No. 84358, Serial No. LTL2DI033D, and one Fruehoff trailer 32' long Serial C 28149 "for the term of one year commencing on the 10th day of October, 1951, and subject to the following terms and conditions:

"1. The lessor does by these presents deliver into the possession and exclusive direction and control of the lessee the aforedescribed property to be used by the lessee in the conduct and operation of his business of the transportation of steel and metal products, over and upon such highways and under such operating conditions as the lessee shall determine.

"2. The lessee will use said equipment as though it were a regular part of his fleet without favoring or discriminating against said equipment in the determination of use to be made of said equipment.

"3. The lessee agrees to keep said equipment in repair and maintain the same in good operating condition at all times and to supply all tires, parts, repairs and replacements as needed and regardless of the nature of such repair, replacement or need, and to pay for all repair, maintenance, replacement, parts, tires and operating fuel, oil and expenses of every nature, including taxes and registration fees.

"4. The lessee agrees to pay the lessor as rental of said equipment an amount per ton mile determined

by the conditions of the haul, with a minimum load of twelve (12) tons on all steel products delivered by said equipment. It is understood and agreed, however, that all necessary and reasonable expenses of maintaining and operating said equipment and all taxes, licenses and truck insurance, with the exception of property and liability insurance, shall be deducted from the proceeds accumulated from the gross mileage and tonnage by the lessee.

"5. It is understood and agreed that in the event of loss of or damage to said equipment by fire, theft, collision, upset or other cause of any nature, whether insured or not insured, the lessee shall be relieved of all obligation in law and equity for said loss, and at its option of the further performance of the terms and conditions of this lease; provided, however, that any insurance purchased under the terms and conditions of this agreement shall inure to the benefit of the lessor as its interest may appear.

"6. Without in any way limiting or altering the provisions of the preceding paragraph, the lessee agrees to carry insurance on said equipment covering loss or damage to cargo, public liability and property damage, at no cost to the equipment or lessor.

"7. It is understood and agreed that the covenants, terms and conditions herein contained shall be binding upon the personal representatives, heirs, executors, administrators and assigns of the parties hereto.

"8. Lessor agrees to comply with the laws and regulations of the United States and of the various states and municipalities where the equipment shall be used in the maintenance of said equipment, and lessee agrees to comply with all of said laws and regulations in the use and operation of said equipment insofar as that is consistent with lessee's control of the equipment under the terms of this lease.

"9. In the event the lessor shall fail to perform all of the terms and conditions of this lease, the lessee may at his option perform in its place and deduct the cost of same as herein provided, or without notice cancel and terminate this lease. No election of remedy shall preclude the lessee from at any time terminating this agreement because of the breach of a condition of the lease by the lessor.

"10.   This lease may be terminated by the lessee upon ten (10) days written notice given to lessor at Provo, Utah, or at such other address as the lessor shall furnish to the lessee in writing.

"11.   It is further agreed by and between the parties hereto that in the event the lessee employs the lessor in the capacity of driver of this particular motor equipment or any other motor vehicle equipment in possession or under the control of the lessee, such employment shall be strictly upon an 'employer-employee' relationship and shall in no manner effect or alter the terms or conditions of this lease.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 10th day of October, 1951.

KEYES TANK COMPANY
By: Donald J. Newell,
Lessee

Rulon K. Jensen,
"(SEAL)                                         Lessor"

In keeping with the interstate nature of this operation the truck drivers, including Jensen when he drove, were carried on the Keyes Tank Company payroll and were paid after each trip with Keyes Tank Company checks and the name of the Keyes Tank Company was painted on the cab doors of the truck. Private carrier permits were obtained by Jensen in the name of Keyes Tank Company to operate in the State of Wyoming, and Keyes Tank Company made mileage reports to the State. Otherwise and regardless of the terms of the lease, Jensen remained in actual possession and control of the truck at all times; he kept it at his home or the home of one of his drivers in Ogden when not in use; he looked after repairs and paid all operating and maintenance expenses in connection with the truck direct; and he dispatched the truck with drivers upon the call of the Keyes Tank Company. The drivers were hired and fired by him and they took their instructions from him, and the amount of their wages was fixed

by Jensen and deducted by Keyes Tank Company from the rentals accruing from the use of the truck. In the words of Jensen, "It was up to me to keep the trucks on the road."

It should be noted that the written lease is not a complete agreement in that the rentals to be paid for the use of the truck are not specified therein. The rents were agreed upon between Jensen and Keyes Tank Company prior to each trip, usually on a ton-mile basis in conformity with railroad rates. In handling the payrolls Keyes deducted withholding tax and issued W-2 forms, paid the employer's share of social security and unemployment taxes and workmen's compensation on the drivers, but it does not appear that the company was reimbursed for these expenses by Jensen as provided for in paragraph 4 of the lease. The record is silent as to what insurance was carried by the parties, so it cannot be determined if the provisions of the lease in this regard were carried out. In any event, the net effect of the insurance provisions was to require Keyes Tank Company to carry its own cargo, public liability and property damage protection.

At about the time that the lease agreement of October 10, 1951, was entered into Jensen told Keyes Tank Company that he could not make enough money just hauling the company's steel and that he would like to haul grain back. Keyes made no objection to this proposal other than to inquire if it would cause any delay, and Jensen assured the company that there would be very little delay. Thereafter Jensen had side boards for the truck made in order to carry loose grain, and on the trips to Kansas he gave his driver, Klinke, drafts with instructions to purchase grain for him and to transport the same in the truck on the return trip to Ogden. Klinke purchased trip insurance in Kansas in Jensen's name to cover these shipments. The truck was being used on the third trip of this kind

when it became involved in the accident in question. Jensen upon the trial of said cause was asked, "Whose work, from the standpoint of carrying goods and products, was your truck engaged in at the time of the accident and for 20 hours prior to the accident?" To which he answered, "That would be my own." Under the facts as above outlined it is extremely doubtful that the written lease agreement was intended by the parties to serve any other purpose than to define a relationship which would permit them to operate the truck in interstate commerce. Actual operation of the truck departed from the letter and spirit of the written instrument in most particulars, and the transportation of grain by Jensen on the back-haul is clearly outside the terms of the lease agreement. Assuming, however, that Keyes Tank Company had possession and control of the truck on the outbound trip and that Klinke and Dunn were actually the company's employees, still only one reasonable inference can be drawn as to the relationship of the parties on the return trip, namely, Jensen assumed exclusive control of the truck at Oakley, Kansas, and borrowed the servants of the Keyes Tank Company for the purpose of transporting his own products back to Ogden.

The method of determining responsibility of the principals for the negligent acts of a borrowed servant is quite thoroughly discussed by this court in the case of Blessing v. Pittman, 70 Wyo. 416, 251 P. 2d 243, 247, wherein the court said:

" * * * in view of the fact that one for whom work is done by a negligent servant is, on grounds of public policy, required to pay the damages proximately caused by the latter, if the work is within the scope of his employment, it often becomes a delicate question when a servant has been loaned to another as to what party should be held responsible, and it is only by the exercise of common sense, and by our innate sense of justice and sound reason that the proper answer can be furnished."

In that case the rule is recognized that "most courts hold that the test is as to who controls the servant or, rather, who has the right of control." This rule is further refined by the test "in whose business was the servant engaged," to which has been added the "scope of business test." Using any of these tests or applying them as factors to the facts in this case, it is apparent that Jensen is the principal who should be held for the negligent acts of Dunn. Operating the truck was incidental to and not within the scope of the business of the Keyes Tank Company, whereas the operation of the truck was the business of Jensen. Jensen admits that Dunn was engaged in his business at the time of the accident, and certainly the transportation of grain was wholly outside of any business interest of the Keyes Tank Company. As stated above, the drivers of the truck at all times remained under the control and direction of Jensen.

Ordinarily the relationship of master and servant is one of fact to be determined by the jury, but where the pertinent facts pertaining to the contract and relationship with the persons involved are not in dispute and but one reasonable inference can be drawn therefrom the question becomes one of law for the court to decide. 57 C.J.S. § 617 p. 411. At the close of the plaintiffs' case and again at the conclusion of the case the defendant Keyes Tank Company moved for judgment, and after the verdict the Keyes Tank Company moved for judgment notwithstanding the verdict, and the plaintiff moved for judgment against the defendant Jensen notwithstanding the verdict. In view of the undisputed facts in this case, the trial court should have sustained these motions. The case should, therefore, be remanded to the District Court with instructions to vacate the judgment against and enter judgment for the defendant Keyes Tank Company and to vacate the judgments for and to enter judgments

against the defendant Rulon Jensen in favor of the plaintiffs for the amount of damages awarded by the jury in each case, said judgments to be joint and several as to the defendant Perkins and several as to the defendant Dunn.

*Judgments sustained in part and remanded for modification in part.*

BLUME, C. J., and HARNSBERGER, J., concur.

## ON PETITION FOR REHEARING

A Petition for Rehearing was filed in this case and was denied without opinion on September 18, 1956.