Donald R. MOONEYHAM, Appellant (Defendant below),

v.

Robert N. KAYS, Doris Kays, and Robert N. Kays, Jr., a minor, Cheryl Kays, a minor, and Nancy Kays, a minor, by and through their father and next friend, Robert N. Kays, Appellees (Plaintiffs below).

No. 3399.

Supreme Court of Wyoming.

Sept. 7, 1965.

Guy, Phelan, White & Mulvaney and Peter J. Mulvaney, Cheyenne, for appellant.

Pence & Millett and Alfred M. Pence, Laramie, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiffs filed complaint charging that the defendant as an employee of Delbert Norton,[1] negligently parked a truck belonging to Mr. Norton on U. S. Highway 30 about three miles north of Bosler, Wyoming, on September 7, 1961, in such manner as to cause the vehicle driven by plaintiff Robert N. Kays to collide therewith, as a result of which the plaintiffs suffered damages. Defendant, admitting the collision, denied generally, but asserted that the negligence of plaintiff Robert N. Kays was the cause of and contributed to the collision and alleged further that plaintiffs were engaged in a joint venture at the time of the collision so that the negligence of Mr. Kays was attributable to and binding upon the other plaintiffs. Under the provisions of Rule 42, W.R.C.P., trial was had on the merits and judgment was entered for the defendant and against the plaintiff Robert N. Kays but for the other plaintiffs and against the defendant. Thereafter defendant filed motion for new

1. Although Delbert Norton was named originally as a defendant, the trial court found that he was deceased at the time of the filing of the complaint and ordered that his name be stricken from the pleadings.

trial, which was overruled, and the matter is now before this court on his appeal.

The facts, as would appear pertinent to the appeal, are as follows:

Mr. and Mrs. Kays owned a station wagon, jointly registered in their names, and in it they left San Mateo, California, at approximately 1 a. m., September 6. They progressed easterly, the driving alternating between Mr. and Mrs. Kays every three or four hours. When Mrs. Kays stopped at Rawlins, Wyoming, for gas, Mr. Kays, who had been sleeping, awakened and commenced driving. From Rawlins to the place of the accident, some ninety miles, Mr. Kays drove at a speed of fifty to fifty-five miles per hour. Mrs. Kays slept in the back with two of the children, the other child lay on the front seat beside her father. The night was dark and although it had been raining in Rawlins the highway was dry at the scene of the accident.

On September 6, 1961, 17-year-old Donald Mooneyham, was driving a tractor and trailer that carried a Roll-O-Plane. The tractor was a 1948 or 1949 Reo; the semi-trailer was a single-axle, flatbed trailer. About two hundred miles from the place of the accident, Donald started having trouble with his vehicle. The engine kept throwing water and would overheat. Donald would stop about every twenty miles and refill the radiator but did not stop at a garage. At about 8:30 p. m. as Donald was coming up a slight grade, the truck engine stopped and he pulled over to the side of the highway. When the truck had come to a complete stop, both of the front wheels were almost off the road but the rear wheels were three feet on the oiled portion of the highway. He left the truck lights on while he set out three bomb-type, kerosene flares, one about five or ten feet in front of the truck, another just to the rear of the trailer and on the highway, and the third about forty or fifty feet behind the vehicle, out at the edge of the highway. Traffic seemed to have no difficulty in passing him. He would check the flares now and then, viewing those to the rear by using his mirrors. He had looked at them not less than fifteen to twenty minutes before the collision and noted that they were all burning. It was chilly, and as the Kays' vehicle approached the truck at about 1:30 on the morning of September 7, Donald sat in the front seat, trying to keep warm, his feet drawn up against his chest, his head down on his knees, and his arms wrapped around himself. Mr. Kays saw neither the truck nor the flares. When his vehicle struck the truck, Donald slid forward and hit on the floorboards. He immediately got out and ran over to the station wagon. About the time he got there, Mr. Kays was out and they began assisting the others from the station wagon, which had begun to burn.

Between Rawlins and the scene of the accident, Mr. Kays had passed two vehicles, one driven by L. M. Sumner. Mr. Kays had followed him until he slowed to about forty in order that Mr. Kays would pass. Shortly thereafter Mr. Sumner became conscious of the fact that the lights of the Kays' station wagon had disappeared. Prior thereto, traveling one-half to three-fourths of a mile behind the Kays, he did not see brake lights go on nor did he see their vehicle anywhere but on the right-hand side of the road, and no other vehicles overtook or passed either of them. As he approached, Mr Sumner saw the Kays' vehicle turned on its top in the left lane. He was probably two car lengths from the truck when he saw it. He observed no flares.

The second vehicle Mr. Kays had passed was driven by Mrs. Belva Moleton. When she was about a half-mile from the accident scene she saw the fire in the highway. She noticed the Sumner car parked ahead and she pulled her car up behind it. When she got out of her car she noticed the truck to the right of the highway. She was about four car lengths from the truck when she noticed it. She saw no flares.

The Kays were taken from the scene of the accident to the Laramie hospital by Mr.

Sumner and Mrs. Moleton. After their departure and before the arrival of a highway patrolman, Donald investigated the area and noted he then had only a flare left at the front of his truck. He went back to the rear and found one flare off to the right hand of the road, perhaps twenty-five feet, and just about even with the rear of the truck, still burning, although seemingly less bright. He brought it back and set it down at the rear of the truck, and it brightened. He could not find the third flare.

A Wyoming Highway Patrolman arrived at the scene of the accident around 2 a. m. He observed one flare in front of the truck and one behind. He found a third flare lying at the side of the road. After daylight he observed some faint brake marks on the highway at the scene of the accident. The longest one was 114 feet and the other 25 feet. The patrolman described them as just faint marks, "Not real hard brake skids at all, but they did come down to the left-hand or side of the road and cut across and run in the corner of the truck." The patrolman testified that ordinarily such tracks would not indicate that anyone turned at a high speed from the left lane toward the truck. He stated there was no way to check treads or anything of that kind to determine whether the marks came from one of the vehicles involved in the collision.

Appellant's allegations of error on the part of the trial court are:

1. That the negligence of the plaintiff Robert N. Kays as found by the trial court was in truth and in fact the sole, only, and proximate cause of the accident and that it was error on the part of the trial court to find, after determining that the plaintiff Robert N. Kays was negligent, that there was any negligence of the defendant which contributed to the injuries sustained by the other plaintiffs.

2. That the plaintiff Robert N. Kays and his wife were engaged in a joint enterprise at the time and place of the accident involved and that the negligence of Mr. Kays as found by the trial court effectively bars recovery by his wife.

It should perhaps be noted that appellant does not argue in this court the theory of joint enterprise insofar as the Kays' children are concerned.

In his argument on point one, appellant admits that the truck was driven to a point where approximately three feet of the left rear corner of the trailer remained upon the main-traveled (oiled) portion of the highway. Although he notes there is dispute in the evidence as to whether or not flares were present around the stranded vehicle as required by statute (§ 31–185, W.S.1957), he contends that even if there had been no flares put out the evidence clearly and convincingly shows that Mr. Kays would still have struck the truck and that any negligence on the part of the defendant was not the proximate cause of the accident. Appellant insists that the testimony concerning the marks is undisputed, that the marks constitute evidence favorable to him, and that this is part of the evidence upon which the trial court found that Mr. Kays was negligent. He insists that the marks show clearly what happened, i. e., Mr. Kays wandered to the left-hand side of the highway and then turned to his right at an angle and collided with the left rear of the truck; there would have been an accident even if the truck had not been there since a prolongation of the skid lines of 25 feet and 114 feet would carry the Kays' station wagon into the borrow pit on the right-hand side of the highway and it would there have come to a disaster just as it did when it struck the defendant's truck.

Appellant observes that in Phelps v. Woodward Const. Co., 66 Wyo. 33, 204 P.2d 179, 187, it was stated:

"'If the defendant's conduct was a substantial factor in causing the plaintiff's loss, it follows that he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result.'"

However, appellant insists that in the instant case whatever he did that might be construed to be negligent was an incidental factor in causing plaintiffs' loss and not a substantial one. He also notes that in the Phelps case this court said, 204 P.2d at 184–185:

" 'No wrong-doer can be allowed to apportion or qualify his own wrong; and that as a loss has actually happened whilst his wrongful act was in operation and force, and which is attributable to his wrongful act, he cannot set up as an answer to the action the bare possibility of a loss, if his wrongful act had never been done. It might admit of a different construction if he could show, not only that the same loss might have happened, *but that it must have happened if the act complained of had not been done.*' " (Emphasis supplied by appellant.)

And appellant reiterates his position that here the consequences would have been equally serious if there had been no collision with the truck.

In view of Mr. Kays' testimony that he did not see the truck and was progressing down his side of the highway at the time of the collision and of Mr. Sumner's statement that he observed the Kays' vehicle after it had passed him, did not see its brake lights go on nor see it on any side of the road except the right-hand side, we are unable to say that the testimony concerning the marks on the highway, inconclusive at most, is sufficient to overturn the judgment of the trial court.

As a part of appellant's argument on point one, he insists that Mr. Kays must have been asleep or at least drowsy just before and during the accident. As to the seriousness of such an implication, appellant cites Holstedt v. Neighbors, Wyo., 377 P.2d 181; McDowall v. Walters, Wyo., 360 P.2d 165, 361 P.2d 528; and Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580. If Mr. Kays' negligence had not already been found, these cases would be pertinent, but they are not determinative of whether the defendant substantially contributed to the injury and do not merit discussion.

Appellant, to support his argument that the passenger-wife is barred from recovery because of being engaged in a joint enterprise with the husband-driver found guilty of negligence, points out that the Kays' vehicle had been purchased by both the husband and wife from their joint earnings and was registered in both their names; that the trip was an emergency regarding which it was agreed to drive straight through and that it involved the entire family; that the Kays had alternated in driving; that while each was driving that person controlled the car; that when Mrs. Kays was driving and her husband was asleep she was in control of the car; that had it happened she had been driving at the time and had had the same accident no doubt the trial court would have found her guilty of negligence and would have barred her recovery; that had that been the case and had the trial court awarded the husband damages there would have been an appeal; and that defendant thinks the law is the same in both instances and that the negligence of the spouse-driver under such circumstances should be imputable to the spouse who was sleeping at the time of the accident. Appellant cites, from Wyoming, Porter v. Wilson, Wyo., 357 P.2d 309; Frazier v. Pokorny, Wyo., 349 P.2d 324; Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580; Gamet v. Beazley, 62 Wyo. 1, 159 P.2d 916; from other jurisdictions, Riggs v. F. Strauss & Son, La.App., 2 So.2d 501; Crawford v. McElhinney, 171 Iowa 606, 154 N.W. 310; and McKerall v. St. Louis-San Francisco Ry. Co., Mo.App., 257 S.W. 166; and generally, 8 Am.Jur.2d Automobiles and Highway Traffic § 668, p. 220. In Porter v. Wilson, supra, the latest pronouncement of this court on which appellant relies, we concluded that where a husband was in physical and actual possession of an automobile, driving as he desired without instruction or suggestion from anyone, and his wife, owner of the automobile and a passenger therein, had no

actual control over the automobile, negligence of the husband was not imputable to the wife. Since in Porter v. Wilson, supra, we discussed the Chandler and Gamet cases and, as appellant notes, there are a great number of factual circumstances here entirely different from Frazier v. Pokorny, supra, analysis of these earlier Wyoming cases seems unwarranted. Of course, in Porter v. Wilson, supra, as here, we were not concerned with situations wherein the driver and passenger stood at the time of the accident in the actual relationship of agent-principal, employee-employer, or where they were business partners or co-joint adventurers in the strict profit-making sense; and in the instant situation there is no controversy over the fact that Mrs. Kays at the time of the collision was asleep and therefore certainly not in a position to exercise actual control over the vehicle. As noted in the Porter case, 357 P.2d at 316:

"The lack of unanimity among the courts and the numerous bases for holding that a driver's negligence is imputable to the spouse-owner-passenger in themselves tend to generate uncertainty * * *. On the other hand, those courts which have been reluctant to impute a driver's negligence to the spouse-owner-passenger have inquired quite carefully into the realities of motor vehicle experience and have sought to have a rational basis for their holdings. * * *"

This court later noted in Edwards v. Harris, Wyo., 397 P.2d 87, 90–91:

"We see no impelling reason to review again the authorities on the matter of imputed negligence where a husband is driving as he sees fit an automobile owned either by his wife or by himself and his wife, and where the wife is a passenger therein. Also, no valid reason has been shown for departing from the position taken in the Porter case."

We still hold to this view, think the principles stated in the two mentioned cases are applicable here, and find no occasion to discuss the cited cases from other jurisdictions.

In fine, this court has been shown no proper grounds for reversal of the trial court's judgment, which must accordingly be affirmed.

Affirmed.