**HOLLY SUGAR CORPORATION et al.,**
Appellants (Defendants below),

v.

Amanda M. **PEREZ** et al., Appellees
(Plaintiffs below).

No. 4152.

Supreme Court of Wyoming.

April 2, 1973.

**596**

Suits were brought by Amanda M. Perez, Santos Martinez, and Domingo Perez against Holly Sugar Corporation, against Clemente Ramos, owner of the truck, and against Oscar Ramos, driver of the truck. The three suits were consolidated for trial. The jury awarded damages to each of the three plaintiffs and the three defendants have appealed.

### Holly's Appeal

Holly's appeal raises the question of whether there was substantial evidence that Clemente Ramos and Oscar Ramos were agents of Holly at the time of the accident. The jury, of course, had to find such agency before it could consider the negligence of the Ramoses attributable to Holly.

According to Holly's version of the facts, the migratory workers were a group for whom Clemente Ramos acted as "crew chief." He owned the truck involved. The workers were to work in beet fields for various farmers. Clemente Ramos recruited the workers. The arrangement with Clemente Ramos was made by Nicolas Medina, an employee of Colorado Employment Service. For several years Medina had gone to Weslaco to assist in the recruitment of laborers for various sugar beet companies, including Holly. Altogether about 1,000 workers were recruited for the various sugar beet companies each year.

Medina advanced to each crew chief about one cent per mile for each worker in his crew. This amounted to about $21.50 per worker in the Ramos crew. In addition, Medina might advance to the head of a family money for subsistence during travel. There is no denial of the fact that Holly supplied (through Medina) the money for advances to Clemente Ramos and his crew. After arrival at their destination, the workers worked for individual beet growers and were paid by them. Field men for Holly, however, would tell the workers where and for whom they were to work. Counsel for Holly admits

W. A. Swainson of Swainson & Swainson, Cheyenne, for all appellants.

Scott & Joffe, Worland, for appellant Holly Sugar Corp.

Mayne Miller, Casper, Gene Huntley, Baker, Mont., for appellees.

Before PARKER, C. J., and McEWAN and McINTYRE, JJ.

McINTYRE, Justice.

A truck carrying migratory workers from Weslaco, Texas to Glendive, Montana, for work in beet fields, turned over 27 miles north of Gillette, Wyoming. Several occupants of the truck were injured.

Oscar Ramos testified he was using the truck to work for Holly Sugar Corporation.

Counsel for the plaintiffs point to testimony of Clemente Ramos which bears upon the question of agency. First, his answers to interrogatories were read into evidence as follows:

"State whether you recruited the passengers who were aboard the truck involved in the accident.

"Answer: Yes, myself and Holly Sugar Corporation.

"Question: State where you recruited them.

"Answer: They were recruited at the Texas employment office in Weslaco, Texas.

"Question: State for what reason you recruited them.

"Answer: I recruited them for Holly Sugar Corporation to work in the sugar beet field in Glendive, Montana.

"Question: State whether Holly Sugar knew that you were recruiting them.

"Answer: Yes. It was with Holly Sugar Corporation that I did this.

"Question: State what arrangements, if any, had been made between you and Holly Sugar Corporation prior to the accident in question with regard to the transportation of the passengers aboard the truck.

"Answer: I was to bring those passengers to Glendive, Montana. Holly Sugar would pay me twenty-one dollars and fifty cents for each passenger over fourteen years of age."

Clemente Ramos also testified by deposition. In his deposition he said he was paid $21.50 for taking each person in his crew from Texas to Montana; that he knew the route because a man from Holly Sugar had shown him the route on a previous occasion; that he and the others who made the trip had been hired by the man from Holly Sugar; that the man from Holly Sugar decided who would ride on the truck; that the man from Holly Sugar advanced mon-

ey to the people who were hired; that Holly Sugar Corporation advanced him the money to buy gas for the truck; that Holly Sugar's field men told them were to work; and that Holly Sugar paid him to recruit workers.

Medina testified that he was advanced money by Holly Sugar Corporation to finance the recruitment; that he had advanced funds for the trip on behalf of Holly Sugar Corporation; that he inspected the truck before it left; that he suggested the route to be followed; and on cross-examination Medina said Holly Sugar Corporation exercised control over the workers he selected.

█ It is true Clemente Ramos, on cross-examination, repudiated statements he had made in his deposition and answers to interrogatories concerning his connections with Holly. He testified, "I don't even know the name of the company. How could I say those things?" Counsel for the company point to this testimony and also suggest Clemente Ramos was uneducated and an illiterate person who did not understand even simple questions. The implication seems to be that his testimony should be disregarded.

Of course it was for the jury and not for us to decide what portions of the Clemente Ramos testimony should be believed and what portions, if any, should be disregarded. Also, it is for a jury and not an appellate court to decide what weight should be given to the testimony of the respective witnesses. In other words, counsel's argument to the effect that testimony of the Ramoses should be disregarded cannot be accepted on appeal.

█ Another part of the evidence tending to prove liability against Holly is a showing that Holly purchased liability insurance to protect it in case of an accident such as the one which happened. Taking the evidence as a whole, we must hold it sufficient for the jury to infer Clemente Ramos and Oscar Ramos were agents for Holly and not independent contractors, as claimed by Holly's attorneys.

In making this claim, Holly's attorneys rely largely on Stockwell v. Morris, 46 Wyo. 1, 22 P.2d 189, 190, where Justice Blume said the controlling or principal test is generally stated to be whether the employer has the right to control the details of the work to be done by the servant or agent, or whether the latter represents the former only as to the result to be accomplished.

We have no occasion to change anything that was said in the *Stockwell* case. However, we would point out that it was for the jury to determine from the evidence before it how much "right to control" Holly had. For example, the jury may have believed Holly had a right to exercise even more control than it did; that it could have said the truck was not safely loaded; that it could have supervised with respect to the number of workers who could be hauled in a truck such as the one involved; and that it could have specified the frequency of rest stops and intervals for changing drivers. Indeed, the failure of Holly to supervise and exercise more control where it had a "right to control" may have been considered by the jury to be evidence of negligence on the part of Holly.

■ Assignment of error is urged on behalf of Holly that prejudicial error occurred when the trial court permitted the jury to be informed that insurance was carried by Holly with respect to the Ramos vehicle. Counsel for the company concede there is authority for the proposition that the existence of insurance may be shown as bearing on the question of principal-agent or employer-employee relationship *if* there is other evidence tending to show the existence of such a relationship. Total reliance seems to be placed on the contention that other evidence of agency was not present in this case.

The attorneys for plaintiffs contend the rule is that the existence of insurance may be shown as bearing on the question of agency regardless of whether other evidence of agency has been offered. They say the legal proposition does not need to be reached in this case, however, because

there was indeed substantial evidence of agency aside from the fact of insurance.

■ Without pretending to try the case anew or to decide whether the Ramoses were in fact agents for Holly, we will say the record discloses ample evidence, disregarding that pertaining to insurance, to satisfy any possible requirement for *other* evidence to support the existence of an agency relationship. In fact, either with or without the evidence pertaining to insurance, we believe the jury could have found the Ramoses were Holly agents or employees.

In a single paragraph in the Holly brief, counsel suggests the only evidence to establish that Clemente Ramos and his driver, Oscar Ramos, were acting as agents of Holly rather than as independent contractors was the declarations of the Ramoses plus the evidence on the existence of insurance. Counsel suggests our court has held declarations of an agent are insufficient *alone* to show agency.

■■ We fail to find support for counsel's suggestion in the cases cited. If the declarations are not hearsay, we know of no reason why an alleged agent may not testify to facts and transactions within his knowledge; and the jury should weigh his testimony the same as any other evidence. We did say in Sun Land & Cattle Co. v. Brown, Wyo., 394 P.2d 387, 388, that a jury was not bound by the testimony of the employee nor employer. In the case at hand, there clearly was testimony bearing on the question of agency aside from declarations made by the Ramoses. Such declarations did not stand alone. Even the fact of insurance would negative any idea that declarations of the alleged agents stood alone.

## Other Assignments

On behalf of all appellants, including Holly Sugar Corporation, the following additional assignments of error are claimed:

1. The trial court erred in denying appellants a continuance of the time of trial.

2. The trial court erred by giving Instruction 9 and refusing Instructions A and B proposed by appellants.

3. The trial court should have either granted appellants judgment notwithstanding the verdict or a new trial.

4. The verdicts were excessive.

1. *Continuance*. The last of the complaints initiating the suits we are concerned with was filed March 12, 1969. Pretrial conferences were held May 13, 1969 and November 18, 1971. Following the November 18, 1971 pretrial conference, it was ordered:

"If plaintiffs appear for their physical examinations more than five days before trial, such date being scheduled by defendants, then defendants shall pay their travel expenses."

Trial was originally set for December 15, 1971. However, on account of the district judge's appointment to the supreme court, that setting was vacated. By order entered January 17, 1972, trial was reset for March 13, 1972. On the day trial was to commence the defendants filed a motion to vacate the trial setting.

■■ Appellants admit they are aware such matters as the granting of continuance are in the discretion of the trial court. In view of this, no attempt to cite persuasive authority has been made, counsel for appellants admitting no case had been found similar in facts to this case. We of course must not judge the matter of abuse of discretion on the basis of showings made to us on appeal. We must judge on the basis of showings made to the trial court when application for continuance was made.

It is the contention of appellants that they ran out of time and were not able to have plaintiffs examined in Cheyenne in sufficient time to have medical testimony at Gillette at the time of trial—either by deposition of the doctor or by his personal appearance. Without pretending to relate all of the facts, dates and contentions, we think it sufficient to say the record indi-

cates to us that defendants were extremely dilatory in their efforts to have plaintiffs examined in sufficient time to have medical testimony available for trial.

Apparently the trial court thought defendants had nobody to blame but themselves and we agree. Moreover, no effort was made to show that the Cheyenne doctor, if present and testifying, would seriously contradict other medical testimony in the case. Section 1–68, W.S.1957, provides:

"A motion to postpone the trial of a case, in any of the courts of this state, on account of the absence of evidence, can be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and, if it is for an absent witness, the affidavit must show where the wtiness resides, if his residence is known to affiant, and the probabilities of procuring his testimony within a reasonable time, and that his absence has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge or consent, and what facts he believes the witness will prove, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured. If, thereupon, the adverse party will consent that, on the trial, the facts stated in the affidavit shall be taken as true, if the absent evidence is written or documentary, and in case of a witness that he will testify to the facts stated in the affidavit as true the trial shall not be postponed for that cause; and, in such case, the party against whom such evidence is used shall have the right to impeach the evidence of such absent witness, as in case where the witness is present, or his deposition is used."

There is no showing that defendants' motion to postpone the trial was based on such an affidavit as § 1–68 requires. That could be particularly important in this case

**600**

because the Cheyenne doctor was actually examined by deposition before trial began, the deposition not being transcribed until later. However, counsel on both sides were present and heard his deposition testimony. Therefore, if appellants had followed § 1–68, it is possible parties might have agreed on the essence of the Cheyenne doctor's opinion concerning the condition of plaintiffs.

■ 2. *Instructions.* At trial the defendants objected to the giving of Instruction 9 which quoted the following from Interstate Commerce Commission rules:

"No motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven if it is so loaded, or if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation."

The contention of appellants is that there was no evidence to justify the giving of this instruction. We disagree. The evidence shows the bed of the truck overhung the rear axle a considerable distance. Boxes of clothes and groceries for some 35 workers filled the truck to a depth of about two feet. Planks were then placed upon the goods and most of the 35 workers were loaded into the remaining space. Some of the workers (the number is unclear) were in two automobiles which were traveling with the truck.

Pictures were introduced in evidence which showed the bed of the truck to be extraordinarily long. The pictures also showed the great quantities of household goods, boxes and barrels which had been loaded on the truck. The jury could infer from the evidence that the load was dangerously distributed and subject to displacement, with too much of it back of the rear wheels; and that unsafe loading contributed to the driver's loss of control of the vehicle on a slick asphalt road in rain.

When the truck slipped or skidded sideways, it must have thrown the workers and baggage around in the back dangerously, changing the weight distribution. This probably contributed to the truck's turning over; and no doubt some of the workmen were injured even before the truck turned over.

In any event, the question of whether Interstate Commerce Commission rules with respect to loading were violated and whether such violation contributed to the accident were jury questions. The evidence regarding the matter was in conflict and the trial court properly instructed on it.

■ Instruction A which was offered by the defendants and refused by the court would have stated:

"You are instructed that skidding without fault of the driver, in and of itself, is not evidence of negligence."

It is true we said in Butcher v. McMichael, Wyo., 370 P.2d 937, 939, that there is no actionable negligence where, without fault of the driver, a vehicle skids across the center line of a highway and collides with an approaching vehicle.[1] We made it clear, however, that the burden rests upon the driver of the skidding vehicle to show he was free from any act of commission or omission which would constitute fault on his part.

The record in the instant case indicates the jury was fully and properly instructed on the matter of negligence. It would be wrong to start instructing negatively with respect to things not in and of themselves negligent. For example, the court might be asked to instruct that age of a driver is not in and of itself evidence that the driver was negligent.[2]

There is no reason why Oscar Ramos, driver of the truck here involved, should not be held to the same standard of care as any other driver. Had proffered Instruction A been given, it would have been confusing to the jury, carrying some implication that Oscar Ramos should be excused

1. To the same effect is Dr. Pepper Company v. Heiman, Wyo., 374 P.2d 206, 208.

2. In Krahn v. LaMeres, Wyo., 483 P.2d 522, 526, we said a minor will be held to the same standard of care as an adult.

because his truck skidded. In other words, the instruction would have unduly emphasized that a driver who skids can be free of fault, without emphasizing that the driver has the burden of showing he was free from fault.

■ Instruction B which was offered by the defendants and refused by the court would have stated:

"You are instructed that a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence or the appearance, of imminent danger to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation."

We discussed a similar sudden-emergency instruction in Gerdom v. Gerdom, Wyo., 444 P.2d 34, 35–36. In that opinion, however, we gave recognition to the principle that, before the rule of sudden emergency will be given application, it must be clear that an emergency existed and was brought about by no negligence on the part of the person in the perilous situation.

It is not at all clear that the accident in this case was caused by a sudden emergency brought about without negligence on the part of the driver. No other vehicle was involved; no ice or snow was involved; there is no showing that any unforeseen and unknown condition arose suddenly or unexpectedly.

On the other hand, there was evidence that the driver had traveled 43 hours without stops for rest or sleep, except what sleep he was able to get in the cab of the truck. The driver knew it was raining and all conditions were known to him. Apparently, without any unknown condition or sudden emergency, the right wheels of the truck went off the pavement and traveled 183 feet with the left wheels on the pavement and the right wheels on the shoulder. The only skid marks were 285 feet from where wheels first went off of the pavement.

Under these undisputed circumstances and conditions, the trial court was warranted in refusing an instruction on sudden emergency.

■ 3. *Judgment for defendants.* We find no merit in the suggestion of appellants that judgment should have been entered for defendants or a new trial granted. Appellants have not argued the matter and we will not discuss it.

4. *Were verdicts excessive?* Damages were awarded by the jury in the amount of $15,000 for Santos Martinez; $20,000 for Amanda Perez; and $60,500 for Domingo Perez. Appellants claim these verdicts are excessive.

■ We have often said we will not disturb a jury's award of damages unless it is shown that the jury acted out of passion or prejudice or otherwise irrationally.[3] No attempt has been made in this case to show passion or prejudice on the part of the jury, except to point to the awards and say they are too large. There is no reason at all to believe the jury in this case would be prejudiced or have a passion raised in favor of the migratory beet workers who are the plaintiffs. Moreover, the awards of damages are all well within the proofs made. Under such circumstances, we will not disturb the amount of awards as made by the jury.

All things considered, it appears the defendants had a fair and error-free trial, being ably represented in the trial by counsel. We find no reversible error.

Affirmed.

Mr. Justice GUTHRIE, not participating.

3. Pan American Corporation v. Like, Wyo., 381 P.2d 70, 76; Fitzsimonds v. Cogswell, Wyo., 405 P.2d 785, 787; State Highway Commission v. Peters, Wyo., 416 P.2d 390, 391. See also Pickett v. Associates Discount Corp. of Wyoming, Wyo., 435 P.2d 445, 447.