John P. NOONAN, Jr., as Personal Representative for and the Administrator of the Estate of Kevin V. Noonan, Deceased, and on Behalf of John P. Noonan, Jr., Ellen H. Noonan, Michael D. Noonan, and Martin D. Noonan, Appellants (Plaintiffs),

v.

TEXACO, INC., a Delaware corporation, Joy Manufacturing Company, a Pennsylvania corporation, and Dresser Industries, Inc., a Delaware corporation, Appellees (Defendants).

No. 84–300.

Supreme Court of Wyoming.

Jan. 15, 1986.*

---

* This opinion was originally published on September 6, 1985. The original opinion has been withdrawn and substituted with the opinion of this date.

P. Richard Meyer of Spence, Moriarity & Schuster, Jackson, for appellants.

G.G. Greenlee and Robert M. Shively of Murane & Bostwick, Casper, for appellee Texaco, Inc.

Thomas S. Gorman and Glenn Parker of Hirst & Applegate, Cheyenne, for appellee Joy Mfg. Co.

Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellee Dresser Industries, Inc.

Before THOMAS, C.J., and BROWN, CARDINE, ROSE (Retired) and ROONEY (Retired), JJ.

BROWN, Justice.

This is an appeal from a summary judgment granted in favor of appellees in a negligence action. Kevin Noonan was killed while working on an oil rig. Appellants brought suit against Texaco, Inc. (hereinafter Texaco), Joy Manufacturing Company (hereinafter Joy), Dresser Industries, Inc. (hereinafter Dresser), Leonard Charles Cruth, Max Atwell, Hercules Drilling, Brinkerhoff Drilling Company, Inc., Brinkerhoff-Signal, Inc., Petrolane Company, Petrolane Drilling Company, Signal Drilling Company, Inc., and Signal Drilling, Inc., for damages incurred in Kevin Noonan's death. All defendants answered and denied liability. Appellees Texaco, Joy, and Dresser filed motions for summary judgment which were granted by the trial court. Subsequent thereto, appellants settled with all the remaining defendants, and appellants' complaint against such defendants was dismissed with prejudice. From the summary judgment granted in favor of appellees Texaco, Joy, and Dresser, this appeal is brought.

Appellants raise the following issues:

"I

"Where a manufacturer negligently fails to guard machinery manufactured by it and fails to warn against its use without proper guards, is the manufacturer entitled to summary judgment because the purchaser/user of the product also failed to provide a guard for the machinery?

"II

"Where the owner of an oil well provided daily supervision over drilling operations and had the power to control safety aspects of the work, was it error for the trial court to grant summary judgment in favor of the owner where the owner knew that unsafe, unguarded rotating machinery was being used at the well site, and failed to warn of or correct such dangerous condition?"

We will affirm.

The facts show that on December 6, 1979, Kevin Noonan was killed while working on an oil rig in the employ of Brinkerhoff-Signal. While there were no eyewitnesses to the accident, the accident report reveals that Kevin Noonan was using a water hose to wash the drilling rig floor when the hose became wrapped around the rotating drill stem, also known as a "kelly." The hose also became entangled around Kevin's foot, lashing him to the rotating kelly. The rotation of the kelly caused his left leg to be severed, resulting in his death. Kevin's body was found with his left leg lashed to the kelly bushing and master bushing, which connect the drill stem or kelly to the rotary table on the drilling rig floor.

When reviewing a summary judgment on appeal, our duty is the same as that of the district court in that we have before us the same material and must follow the same standards. American Legion, *Samuel Mares Post No. 8, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985); and *Roth v. First Security Bank of Rock Springs*, Wyo., 684 P.2d 93 (1984). The party moving for summary judgment has the burden of proving there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Larsen v. Roberts*, Wyo., 676 P.2d 1046 (1984); and *Miller v. Reiman-Wuerth Company*, Wyo., 598 P.2d 20 (1979). We look at the record from the viewpoint most favorable to the party opposing the motion, giving him every favorable inference which may be drawn from facts in the affidavits, depositions, and other material properly submitted in the record. *Reno Livestock Corporation v. Sun Oil Company* (Delaware), Wyo., 638 P.2d 147 (1981); and *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980).

## I

Although argumentative, appellants' first issue basically makes inquiry as to whether summary judgment was proper with regard to appellees Joy and Dresser.

Appellants assert that Joy manufactured the kelly bushing and Dresser manufactured the master bushing. The thrust of appellants' argument is that Joy and Dresser were negligent in not designing and manufacturing guards for the kelly bushing and master bushing. However, the trial court found such argument untenable since the driller Brinkerhoff-Signal had made a conscious decision not to use such guards. In his decision letter, the judge noted:

"As for Joy's and Dresser's motions for summary judgment, they are granted for the simple reason that regardless of the argument they failed to provide a bushing guard or failed to manufacture a safe one or violated some duty in that regard, all as alleged by plaintiff, the fact remains, as noted above, that no matter what they would have done, Brinkerhoff-Signal would not have used the guard. In short, as both Joy and Dresser point out, the failure to provide or manufacture such a guard was not the cause of the accident. *Kopriva v. Union Pac. R. Co.*, 592 P.2d 711, 713 (Wyo.1979) said:

" 'In *Lemos v. Madden*, 28 Wyo. 1, 10, 200 P. 791, 793 (1921) Justice Blume defined the issue as follows:

" ' "The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred."

" 'Later in the case, 28 Wyo. at 12, 200 P. at 794, Justice Blume rejected the notion of "but for" causation and stated:

" ' "But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion."

" 'See also, *Frazier v. Pokorny*, Wyo., 349 P.2d 324 (1960); *Gilliland v. Rhoads*, Wyo., 539 P.2d 1221 (1975);

and 57 Am.Jur.2d Negligence, § 378. See 65 C.J.S. Negligence § 103:'

"If the absence of the bushing guard contributed to the accident, its absence was the conscious decision of Brinkerhoff-Signal not to obtain one or use one if it had been available to it."

■ In support of their motions for summary judgment, Joy and Dresser filed the affidavit of Max Atwell, safety director for Brinkerhoff-Signal, employer of the deceased. He testified in his deposition that it was the policy of Brinkerhoff-Signal not to use bushing guards because it was the opinion of Brinkerhoff-Signal, as well as the drilling industry, that such guards were of questionable use and safety. It is clear that Brinkerhoff-Signal made a conscious choice not to use bushing guards, and it seems immaterial whether Joy and Dresser manufactured their products with or without guards since the guards would not have been utilized on the drilling rig. Therefore, appellants have failed to show the existence of a genuine issue of material fact; i.e., how Joy and Dresser's negligence, if any, was the proximate cause of the accident and resultant death. See, e.g., *Thomas v. South Cheyenne Water and Sewer District*, Wyo., 702 P.2d 1303 (1985); *Apperson v. Kay*, Wyo., 546 P.2d 995 (1976); *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971).

In opposition to Joy and Dresser's motions for summary judgment, appellants filed a "Memorandum in Opposition to Motions to Dismiss by Defendants Joy Manufacturing Company and Dresser Industries, Inc." It is noted that there were numerous depositions filed in the record, but since we view the evidence on a motion for summary judgment in the same light as the district court, we need only consider those depositions which were before the district court. Appellants asserted that it was negligent for Joy and Dresser not to manufacture guards for the kelly bushing, master bushing, and rotary table. However, as noted above, appellants failed to show how this was the cause of the accident in this case when the driller would not have used such guards in any event. Although speculative, it may be surmised that if Joy and Dresser had manufactured their products with such guards, Brinkerhoff-Signal still would have refused to use them because Brinkerhoff-Signal questioned their utility and safety. It must also be noted that the water hose in the instant case initially became wrapped around the rotating kelly, not the kelly bushing where it eventually wound up. Appellants have not claimed it was negligent to leave the kelly unguarded.

■ It is further noted that the memorandum filed by appellants' counsel in opposition to Joy and Dresser's motions for summary judgment is full of categorical assertions of ultimate facts. If such categorical assertions, totally unsupported by competent evidence, could be used to withstand a motion for summary judgment, the procedure would be rendered useless. *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974); and *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360 (1974).

■ Appellants also assert in their brief that "Prior to Kevin Noonan's death, OSHA began citing drilling contractors for failing to guard the kelly bushing. Nonetheless, Joy consciously decided not to manufacture guards for the equipment or to warn against its use without guards." This argument is misleading when viewed in context with all relevant facts. While it is true that federal OSHA rules and regulations require kelly bushing guards and failure to use such may result in a citation, Wyoming OHSA rules specifically exempt the "rotary table, kelly and cathead" from guard requirements. Wyoming Occupational Health and Safety Rules and Regulations for Oil and Gas Drilling, Ch. 5, § 1(7). In a letter addressed to appellants' counsel dated July 1, 1981, Donald D. Owsley, Administrator for the Wyoming Occupational Health and Safety Commission, revealed that the Wyoming Occupational Health and Safety Rules and Regulations "do not require guarding of the rotary table, the kelly bushing, or the kelly. In fact, the rules

specifically exempt such equipment from guarding." Furthermore, the Wyoming OHSA rules and regulations are controlling over federal OSHA rules and regulations once the secretary of labor determines that a state has promulgated standards comparable to the federal OSHA and has an enforcement plan in compliance with Section 18 of the Federal Occupational Safety and Health Act of 1970. Therefore, the Wyoming OHSA rules and regulations are controlling in this case and the Wyoming OHSA regulations do not require kelly bushings. An investigation into the accident was made by the Wyoming Occupational Health and Safety Department and such concluded there had been no violations of applicable rules and regulations which contributed to the fatality.

In any event, it is difficult to find any alleged negligence on the part of Joy or Dresser to have been the cause of the injuries and death here when the deceased's employer, Brinkerhoff-Signal, chose not to use such guards on its drilling rig. It matters not what Joy and Dresser did or failed to do regarding bushing guards when their utility and safety were in question by the industry as a whole, Wyoming OHSA regulations specifically exempted such guards, and Brinkerhoff-Signal refused to use them. Furthermore, Joy and Dresser manufactured only component parts which were assembled as part of the oil rig by another party. Joy and Dresser had no control over the manner in which the drilling rig was constructed nor did they have anything to do with a decision concerning the assembly of safety features. We find summary judgment was proper with respect to Joy and Dresser.

## II

Appellants' second issue basically asks whether summary judgment in favor of Texaco was proper. Appellants' wording of the issue is argumentative and makes assertions of fact which have never been proved.

■ Brinkerhoff-Signal was in the course of drilling an oil well for Texaco when the accident occurred. The relationship of Brinkerhoff-Signal to Texaco was that of independent contractor. The agreement between these two parties is clear evidence of such relationship, which specifically provided:

"17. INDEPENDENT CONTRACTOR:

"17.1 In the performance of the work herein contemplated, Contractor is an independent Contractor, with the authority to control and direct the performance of the details of the work, TEXACO being interested only in the results obtained. But the work contemplated herein shall meet the approval of TEXACO and be subject to the general right of inspection and supervision herein provided to TEXACO to secure the satisfactory completion thereof. The actual performance and superintendence of all work hereunder shall be by Contractor, but TEXACO shall be privileged to designate a representative or representatives who shall at all times have access to the premises for the purpose of observing tests or inspecting the work performed by Contractor, in order to judge whether, in TEXACO's judgment, such work is being performed by Contractor in accordance with the provisions of this contract and the Drilling Bid Contract. Such representative or representatives shall be empowered to act for TEXACO in all matters relating to Contractor's performance of the work herein undertaken."

■ In Wyoming, the overriding consideration in determining whether one is an employee or independent contractor is dependent upon whether or not the employer has the right to control the details of the work whereby liability is sought to be established. *Scott v. Fagan*, Wyo., 684 P.2d 805 (1984); *Combined Insurance Company of America v. Sinclair*, Wyo., 584 P.2d 1034 (1978); *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52 (1974). The determination of such issue is ordinarily one of fact for the trier of fact, but becomes one of law when only one reasonable inference can be drawn. *Combined Insurance Com-*

*pany of America v. Sinclair,* supra; and *Barnes v. Fernandez,* Wyo., 526 P.2d 983 (1974).

 While it is true that a contract is not conclusive evidence of the status of the relationship between parties, it is a strong indication of the intended association. In *Combined Insurance Company of America v. Sinclair,* supra, at p. 1044, this court stated:

> "We should say—perhaps in emphasis— that the most telling evidence indicating the intention of the parties with respect to the type of association they contemplated is the contract of employment itself * * *."

In *Parsons v. Amerada Hess Corporation,* 422 F.2d 610, 611 (10th Cir.1970), the court stated: "While the contract is not conclusive evidence of the legal relationship of the parties, it is to be sure cogent evidence of it." In this case, Texaco's supervisory role was result oriented so as to insure satisfactory performance of the work. Such a role is common between owners and independent contractors. Texaco did not retain the power to control the activities of the driller, Brinkerhoff-Signal.

> " * * * [T]he owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, [citation] the right to stop the work, [citation] the right to make suggestions or recommendations as to details of the work, [citation] the right to prescribe alterations or deviations in the work, [citation]—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship. * * * " *McDonald v. Shell Oil Company,* 44 Cal.2d 785, 285 P.2d 902, 904 (1955).

See also *Peter v. Public Constructors,* 368 F.2d 111 (3rd Cir.1966).

In *Sword v. Gulf Oil Corporation,* 251 F.2d 829 (5th Cir.1958), the court found an employee of an independent contractor engaged to drill an oil well for Gulf Oil could not hold Gulf liable for injuries sustained in a drilling rig accident. The employee was injured when his foot and leg got caught in the revolving clutch of the rig which had no guard. The court found that Gulf could not be held liable for the injury since its relationship to the driller was that of independent contractor and since Gulf was only interested in the results of the work. The court stated:

> "As has been noted, * * * the contract provided that in the performance of the work the contractor was an independent contractor with the authority to control and direct the performance of the details of the work, and that Gulf was interested only in the results obtained. The contract continued: 'But the work contemplated herein shall meet the approval of Gulf and be subject to the general right of inspection herein provided to Gulf to secure the satisfactory completion thereof.' That degree of right of supervision and control was clearly reserved for the benefit of Gulf itself, in its legitimate concern for the protection of its investment and properties and the satisfactory completion of the well. * * * That degree of right of supervision and control was not inconsistent with the relationship between Gulf and its independent drilling contractor as such, and did not impose on Gulf any direct duty to the employees of its independent contractor, in the absence of actual control of the operations by Gulf or its employees." *Id.,* at 833.

Accord, *Hurst v. Gulf Oil Corporation,* 251 F.2d 836 (5th Cir.1958), reh. denied, 254 F.2d 287 (5th Cir.1958), cert. denied 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958).

A case involving similar facts recently arose in *Simpson v. Home Petroleum Corporation,* 770 F.2d 499 (5th Cir.1985). In that case, a drilling rig crew member brought action against the oil and gas lessee and the lessee's drilling consultant for injuries he received in an accident involving the kelly. The plaintiff-employee alleged that the lessee (Home Petroleum) was responsible for the drilling consultant's

(Weems') acts through a master-servant relationship. After trial to a jury, the jury found the relationship to be that of an independent contractor. On appeal the Fifth Circuit discussed burden of proof at length, and upheld the jury verdict finding an independent contractor relationship.

"Home offered evidence indicating that Weems acted as an independent contractor, for whom Home would not be responsible. It established that Weems billed for his services on a monthly basis and, unlike the company men, that Home did not take out deductions from his paycheck. It also introduced an expert witness who testified that consultants like Weems work independently of rig operators such as Home. On cross-examination, however, the expert testified that a drilling consultant has somewhat less discretion than a drilling foreman to vary from Home's instructions in the well prognosis. All in all, this evidence tends to establish an employer/independent contractor relationship between Home and Weems.

\*　　\*　　\*　　\*　　\*　　\*

"Finally, as we have noted, the existence of a master-servant relationship is a necessary part of the plaintiff's case when recovery is sought on a *respondeat superior* theory, and in that regard 'the essential inquiry is whether or not the employer has the contract right to control the opposite contracting party in the details of the work to be performed.' [Citation.] Such a right to control is a prerequisite of the master-servant relationship. Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship. Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily negatives the other, each depending on opposite answers to the same right of control inquiry. \* \* \*" Id., at 501, 506–507.

In support of its motion for summary judgment, Texaco filed the affidavit of Charlie Cruth, employed by Brinkerhoff-Signal, who testified that the daily operations of drilling the well for Texaco were left up to Brinkerhoff-Signal. The power to hire and fire employees on the rig belonged to Brinkerhoff-Signal.

In opposition to Texaco's motion for summary judgment, appellants filed, among other things, the affidavit of John Butters, an engineer. Mr. Butters claimed the drilling rig in question was in violation of federal OSHA regulations regarding the proper safety color codes. However, Mr. Butters did not state exactly how the drilling rig parts in apparent violation of the safety color codes should have been colored. Such allegation is not totally clear, and what we have said previously regarding the applicability of federal OSHA regulations is applicable here. Mr. Butters further stated that in his opinion the absence of bushing guards was a violation of industry standards. Such allegation is not persuasive since we have already noted that the safety and benefit of such guards were in controversy within the oil drilling industry.

Appellants also relied upon the affidavit of Raymond F. Tyler, a company man from Texaco, who opined that he personally would not allow an oil rig to operate without a kelly bushing guard in place. But such seems inconsequential since we have already determined that Texaco's relationship with the driller was that of an independent contractor, and Texaco exercised no control over the performance of the details of the driller's work.

It is claimed that because Texaco retained the right to inspect and require safe equipment, material and supplies and to require replacement if deemed unsafe, that such destroyed the asserted independent contractor status. Paragraph 3.21 of the contract between Texaco and Brinkerhoff-Signal provided:

"3.21 TEXACO shall have the right from time to time to inspect and examine the drilling equipment, material and supplies furnished by Contractor and if found inadequate or unsafe for the work required

to be done, Contractor shall at once replace the article or articles with articles deemed by TEXACO to be adequate and safe for such work."

■ We do not think such a provision destroys the independent contractor relationship. We think an owner who undertakes to see that an independent contractor operate in a safe manner ought not be penalized. The reservation of a right to require safe equipment, material, and supplies to be used by the contractor is not without justification or reason. The owner has a vital interest in assuring himself that his well will be drilled efficiently, in a good workmanlike manner, at a reasonable cost, and that the final result is as good as possible. Good, safe equipment is a substantial factor in insuring that performance. But, a simple reservation of a right to inspect and secure that benefit does not cause the contractor to become the owner's employee, for the owner has not taken over the details of safety with respect to the contractor's employees.

The contractor still accepts and reviews applications for employment, determines who to hire, presumably knows which potential employees have accident records and their past employment history. The contractor-employer is responsible for safety training of his employees and for training them in the performance of their work. He provides safety equipment and manuals and retains the right to discipline or even discharge them for unsafe practices. The details of safety being in control of the contractor rather than Texaco, it is apparent to us that Texaco's minimal, and we feel necessary, involvement in safety did not result in the contractor becoming Texaco's employee so that Texaco became liable to appellant under the doctrine of respondeat superior.

One authority has stated:

"It is apparent that virtual abrogation of the general doctrine of an employer's nonliability for acts of an independent contractor or the latter's servants would result if the law were to predicate, under all circumstances, the existence of an absolute duty on the employer's part to guard against all accidents, probable as well as improbable, that might happen, to the damage of third persons, while stipulated work is being performed by an independent contractor. If, therefore, recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, the action must fail unless the plaintiff can at least show that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted. * * *" 41 Am.Jur.2d Independent Contractors § 35, p. 795 (1968).

Indeed, it may be negligent for an owner to fail to provide that an independent contractor perform his work in a safe manner:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a) *fails to provide in the contract that the contractor shall take such precautions,* or

"(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." (Emphasis added.) Restatement (Second) of Torts § 413 (1965).

■ We agree with the district court's disposal of Texaco's motion for summary judgment wherein it stated:

"It seems obvious to me that Texaco had nothing to do with the accident. Obviously, Brinkerhoff-Signal, as the driller, was an independent contractor of Texaco who had no control over Brinkerhoff's employees. * * *"

We find summary judgment was also proper with regard to Texaco in that appellants also failed to establish any genuine issue of material fact. We think it clear that the relationship between Brinkerhoff-Signal and Texaco was that of independent contractor and that appellants failed to support their allegations of negligence on the part of Texaco.

The judgment of the district court is affirmed.

THOMAS, C.J., specially concurs.

ROSE, J. (Retired), dissents.

THOMAS, Chief Justice, specially concurring.

In the briefs and oral arguments *Holdaway v. Gustanson*, 546 F.Supp. 231 (D.C. Wyo.1982), rev'd sub nom. *Holdaway v. Amoco Production Co.*, 751 F.2d 1129 (10th Cir.1984), was cited to us. As the opinion of the court in this case demonstrates, the Honorable Ewing T. Kerr, Senior Judge, United States District Court for the District of Wyoming, accurately discerned the law of the State of Wyoming, and applied it in *Holdaway v. Gustanson*, supra. It seems to me appropriate to note that it was he who successfully predicted the rule in the State of Wyoming applicable to a contract like that involved in this case, and that the United States Court of Appeals for the Tenth Circuit should not have reversed his decision.

ROSE, Justice, dissenting.[1]

I will dissent from that part of the majority opinion which upholds the district court's granting of summary judgment to Texaco.

## INTRODUCTION

The majority opinion erroneously affirms the summary-judgment disposition of the suit between plaintiffs-appellants and Texa-co, Inc. Not only is there—at the very least—a question of material fact on the issue of whether Brinkerhoff-Signal, Inc. (hereinafter referred to as Brinkerhoff) was—*in the safety aspects of its agreement with Texaco where liability is being asserted*—an independent contractor or an employee, but it seems clear to me that, as a matter of controlling precedential law, Brinkerhoff was a servant of and under the detailed control of Texaco which control Texaco, in practice, exercised with respect to the safety features of its relationship with contract drillers.

In the first place, it is hard to read the majority opinion and remain aware that we are involved in contemplating a summary-judgment question, since a plethora of relevant material and competent testimony and contract evidence constituting issues of material fact in the safety area, where liability is being asserted, is everywhere. Even so, the majority ignore our well-established summary-judgment law and affirm the trial court's granting of the summary judgment in behalf of Texaco.

*Summary-Judgment Review Standards*

In *Greaser v. Williams*, Wyo., 703 P.2d 327, 332 (1985), we said:

"Our review of these questions is governed by the fundamental rule that summary judgment properly issues only upon the dual findings that no genuine question of material fact exists and that the prevailing party is entitled to judgment as a matter of law. *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984); *Matter of Estate of Brosius*, Wyo., 683 P.2d 663 (1984). To determine the propriety of a summary judgment, we must examine the record in the light most favorable to the party against whom the summary judgment was entered and give to that party the benefit of all inferences which properly can be drawn from the available evi-

---

**1.** Even though I reach the same conclusion here, this opinion simply edits and reaffirms my dissenting opinion published in this appeal on September 6, 1985, prior to my retirement on November 1, 1985. This new dissent is necessitated by the majority's changing of their opinion, which is again revised and republished after publishing and circulating a purported final majority opinion to lawyers of the State of Wyoming in September of 1985.

dence. *Rompf v. John Q. Hammons Hotels, Inc.,* supra. If we find that an inquiry into the facts was necessary for the proper application of the law, we must overturn the summary judgment. *Kimbley v. City of Green River,* Wyo., 642 P.2d 443, 446 (1982),"

and:

"Summary judgment is not available where the parties dispute the facts which explain and give meaning to their agreement. *Weaver v. Blue Cross-Blue Shield of Wyoming,* Wyo., 609 P.2d 984, 989 (1980)." 703 P.2d at 334.

*Issues of Material Fact Are Present in the Case*

In the case at bar, the contract between Texaco and Brinkerhoff provides that, *in the area where safety is a factor,* it is Texaco that controls, supervises and makes the ultimate decisions and, according to Texaco's field supervisor, it is Texaco which possesses the final decision-making power to shut the drilling operation down if, in *its* judgment, Texaco's safety requirements are not being complied with. These powers and authorities are exemplified by the contract and the conduct of the parties including the field supervisor for Texaco. It is worth noting that the retention of these powers and authorities is neither denied by the parties nor refuted by the evidence in the case. Paragraph 3.21 of the contract provides:

"3.21 *TEXACO shall have the right from time to time to inspect and examine the drilling equipment, material and supplies furnished by Contractor and if found inadequate or unsafe for the work required to be done, Contractor shall at once replace the article or articles with articles deemed by TEXACO to be adequate and safe for such work.*" (Emphasis added.)

The paragraph of the contract between Texaco and Brinkerhoff upon which the majority rely to reach their result is:

"17. INDEPENDENT CONTRACTOR:

"17.1 In the *performance of the work herein contemplated,* Contractor is an independent Contractor, with the authority to control and direct the performance of the details of the work, TEXACO being interested only in the results obtained. But *the work contemplated* herein shall meet the approval of TEXACO and be subject to the general right of inspection and supervision herein provided to TEXACO to secure the satisfactory completion thereof. *The actual performance and superintendence of all work hereunder shall be by Contractor, but TEXACO shall be privileged to designate a representative or representatives who shall at all times have access to the premises for the purpose of observing tests or inspecting the work performed by Contractor, in order to judge whether, in TEXACO's judgment, such work is being performed by Contractor in accordance with the provisions of this contract and the Drilling Bid Contract.* Such representative or representatives shall be empowered to act for TEXACO in all matters relating to Contractor's performance of the work herein undertaken." (Emphasis added.)

It is perfectly clear to me that this independent-contractor provision pertains to the *drilling requirements*—i.e., "the performance of the work herein contemplated" and the field representative, under *this* provision, is given access to the premises to inspect the "work [of drilling the well]" so that Texaco may be informed, throughout the drilling operation, whether or not "such work" is being performed "in accordance with the provisions of this contract and the Drilling Bid Contract." This provision therefore contemplates that Brinkerhoff will remain an independent contractor in its relations with Texaco with respect to the performance of the work contemplated by the drilling requirements of the contract and the bid agreement, while reserving to Texaco the right to inspect and inquire so as to make certain that the drilling is being performed in accord with the agreements of the parties. This was the interpretation of the Texas federal court when this self-same provision was under consideration in

*Sword v. Gulf Oil Corporation,* 251 F.2d 829 (5th Cir.), cert. denied 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65 (1958), a case upon which the majority place great reliance. The Federal District Court for the Western District of Texas said in *Sword:*

"As has been noted * * * the contract provided that *in the performance of the work* the contractor was an independent contractor with the authority to control and direct the performance of the details of the work, and that Gulf was interested only in the results obtained. The contract continued: 'But the work contemplated herein shall meet the approval of Gulf and be subject to the general right of inspection herein provided to Gulf to secure the satisfactory completion thereof.' *That degree of right of supervision and control was clearly reserved for the benefit of Gulf itself, in its legitimate concern for the protection of its investment and properties and the satisfactory completion of the well."* (Emphasis added.) 251 F.2d at 833.

But, the *Sword* case does not even consider a contract provision comparable to ¶ 3.21 of the Brinkerhoff-Texaco agreement wherein the principal retains control over the details of the safety factors of the drilling operation.[2] For my part, I would be willing to concede that a contract which included the ¶ 17.1 language and *excluded* the ¶ 3.21 language would compel the same results as those reached in *Sword v. Gulf Oil Corporation,* supra, and its companion case, *Hurst v. Gulf Oil Corporation,* 251 F.2d 836 (5th Cir.), reh. denied 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958). In other words, as was said in Hurst:

" * * * *In the absence of any actual control of the operation, or of any reserved right of control more than that deemed necessary to secure the satisfactory completion of the work,* an employ-

er of an independent contractor owes no duty to the contractor's employees to inspect or to supervise the installation or operation of the machinery furnished by the contractor." (Emphasis added.) 251 F.2d at 838.

In the case at bar, there *is* a "reserved right of control more than that deemed necessary to secure the satisfactory completion of the work"; namely, such control over the safety features of the work as that expressed in ¶ 3.21.

*With respect to the safety of the equipment, the OSHA regulation requirements and the parties' safety obligations to each other and third persons*—the area with which we are concerned in this appeal—Texaco, under ¶ 3.21, retained the right to supervise the safety program, demand compliance with OSHA regulations and require part and equipment replacement. According to the field supervisor for Texaco, this separate reservation of authority permits Texaco to shut down the drilling operation if—in Texaco's judgment—its safety requirements are not complied with. The presence of these authorities and powers constitutes sufficient evidence of a retention of the right to control the details of the work in the area of safety—*the area where liability in this case is sought to be established*—so that the ravages of a summary judgment should not have been imposed. *Holdaway v. Amoco Production Company,* 751 F.2d 1129 (10th Cir.1984), discussed infra.

Not only does ¶ 3.21 of the agreement contemplate that Texaco will retain the right to control the details of the safety features of the drilling operation, but further evidence of the intention of the parties in this respect is to be found in the testimony of Raymond Tyler, Texaco's field super-

---

2. In fact, in *Sword,* supra, 251 F.2d at 831, the responsibility for the safety program is specifically assigned to the driller. The applicable provisions are:

"'Contractor shall maintain well control equipment in good condition at all times; shall test the blowout preventers at least once each tour by closing the rams; and shall test

the master gate valve by closing same each time the drill pipe is pulled.'"

"'Contractor shall provide and have available at all times for use by Contractor's employees engaged in the performance of the work herein undertaken, all safety appliances needed for the maximum protection of Contractor's employee's [sic] against injuries.'"

visor. He explains that, in those instances where he has observed safety violations while this and identical contractual arrangements have been in effect, it has been his duty to inform the drilling contractor's tool pusher and request that he correct the problem—but if the tool pusher did not comply, it was Tyler's duty and habit to report the safety infraction to upper Texaco management who would then impose Texaco's demands upon the upper management of the drilling contractor. Tyler testified that he had been instructed to take care of these infractions as soon as possible according to these procedures. The field supervisor went on to explain that he had, at various times, admonished the contractor about safety infractions. When asked if Texaco gave him the power to stop an operation that he found unsafe, he testified:

"A Upper management stops them.

"Q All you do is report to upper management?

"A Right.

"Q And upper management of Texaco, if they want to, can stop the work?

"A Yes.

\* \* \* † \* \*

"Q (By Mr. Meyer) You yourself had no power to stop the contractor from proceeding with his work if you saw that he was breaking the OSHA regulations?

"Mr. Greenlee: Asked and answered. He has already answered that question.

"Q (By Mr. Meyer) That's true though, isn't it?

"A That's true.

"Q You had to rely upon the reporting system that Texaco had set up before anything could be done to stop the operation; is that true?

"A To a sense.

"Q Tell me why.

"A Within the operation, if I am having these type of problems and I call up and recommend, you know—I guess there is kind of a vaguity here of what powerless means. See? I mean, as far as me saying shut the rig down.

"Q You can't do it?

"A I don't have that type of authority.

"Q You have the authority to call your boss?

"A I call management, and I say: These are the—this is the situation, and I recommend, and then they say yes/no.

"Q They make a decision based upon whatever they want to do?

"A Right."

Raymond Tyler testified that he would not permit the drilling operations to proceed in circumstances where he believed unsafe conditions existed. In this connection he said that he believed the controversial bushing guards to be an important safety factor and he would not permit a rig to operate without them. He testified as follows:

"Q. Would you require that the rig stop operation until the guard could be placed or would you permit it to be operated until one could be obtained, under your procedures as you understand it?

"A. Are you asking me for a personal—what I personally would do from my own viewpoint?

"Q. Yes, sir.

"A. *I wouldn't let them operate.*

"Q. Because you know now that it would be unsafe—or potentially unsafe to operate the rig without a Kelly guard; isn't that true?

"A. Can I explain why?

"Q. Sure.

"A. First of all, there would be no need for me to delay drilling operations because there is no Kelly bushing guard. Okay? If the rig starts to move in, there are multitudes of things to do, and I would go to the tool pusher and say, you know: You don't have a bushing guard, so, therefore, before we pick the Kelly up—and there has been many things to do prior to that—I would suggest to him or ask him to be sure that there was a Kelly guard on it or a bushing guard.

"Q. *Is one of the reasons that you would insist that the guard be in place before they could operate because of*

*your knowledge that it might be a safety hazard?*

"A. *I would say yes.*

"Q. The reason that you person—the thing that taught you personally that it was unsafe or potentially unsafe to operate a rig without a Kelly bushing guard was Kevin Noonan's death?

"A. Yes." (Emphasis added.)

Tyler also testified that it was his responsibility to take care of known safety problems "as soon as possible" and that he was supposed to make sure that they were corrected.

## THE LAW

The irony of the majority opinion is this: It first quotes the "independent contractor" paragraph, ¶ 17.1 of the contract—does not even acknowledge the existence of ¶ 3.21, which is the paragraph which pertains to the aspect of the agreement with respect to which the appellant seeks to hold Texaco liable—and then, having quoted an inapplicable provision of the contract, proceeds to test it against the right rules of contract law. For example, after quoting ¶ 17.1, and having failed to mention ¶ 3.21, the majority say:

"While it is true that a contract is not conclusive evidence of the status of the relationship between parties, it is a strong indication of the intended association. In *Combined Insurance Company of America v. Sinclair,* [infra at] 1044, this court stated:

" 'We should say—perhaps in emphasis—that the most telling evidence indicating the intention of the parties with respect to the type of association they contemplated is the contract of employment itself * * *.'

"In *Parsons v. Amerada Hess Corporation,* 422 F.2d 610, 611 (10th Cir.1970), the court stated: 'While the contract is not conclusive evidence of the legal relationship of the parties, it is to be sure cogent evidence of it.' " 584 P.2d at 1044.

I would be the last to question these rules of law since it was I who authored

*Combined Insurance Company of America v. Sinclair,* Wyo., 584 P.2d 1034 (1978), but the majority abuse their appellate license when they apply the contract rules of Combined Insurance and Amerada Hess to a provision of the contract which is inapplicable and irrelevant to the issue at hand. The question for decision in this case is whether or not there is a material fact presented on the issue of whether Texaco retained control of and exercised control over the *safety features* of the contract— *not the drilling operation features!!*

In deciding whether Brinkerhoff was an independent contractor or an employee of Texaco in the safety area of their relationship, the test is whether or not Texaco retained the right to control the details of the aspect of the work which caused plaintiff's injury. As the majority indicate, the law on this subject has been carefully reviewed by this court in *Combined Insurance Company of America v. Sinclair,* supra, but—to the great misfortune of the appellant—Combined Insurance has been misapplied by the majority in the case at bar. The question of whether or not a person is an independent contractor or an employee is to be resolved by ascertaining whether or not the employer (or principal) has

" * * * the *right to control* [emphasis in original] the details of the work *whereby liability is sought to be established.* [Emphasis added.] *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189." 584 P.2d at 1042.

Thus, in *Combined Insurance,* we held that the base issue is whether the principal retained the right of control over the activity where liability is sought to be established, citing *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows,* Wyo., 526 P.2d 52 (1974); *Tyler v. Jensen,* 75 Wyo. 249, 295 P.2d 742 (1956); *Fox Park Timber Co. v. Baker,* 53 Wyo. 467, 84 P.2d 736, 120 A.L.R. 1020 (1938); *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189 (1933); *Chatelain v. Thackeray,* 98 Utah 525, 100 P.2d 191 (1940); and *Ludlow v. Industrial Commission,* 65 Utah 168, 235 P. 884 (1925). See

also 41 Am.Jur.2d, Independent Contractors §§ 5 and 7. We held that this issue of retained control and right of control in the area where liability is sought to be established is ordinarily a question of fact, rather than one of law. We said:

" * * * This issue is ordinarily a question of fact for the jury and becomes a question of law only when but one reasonable inference can be drawn. *Barnes v. Fernandez* [infra], and *Tyler v. Jensen*, 75 Wyo. 249, 295 P.2d 742, 749. More particularly, the extent to which an [employer] has the 'right to control' is primarily a jury question. *Holly Sugar Corporation v. Perez*, Wyo., 508 P.2d 595, 598." 584 P.2d at 1042.

In *Barnes v. Fernandez*, Wyo., 526 P.2d 983, 985 (1974), we said:

"The determination of whether the relationship of master and servant exists is ordinarily one of fact to be determined by the jury and it is only where the pertinent facts are not in dispute and but one reasonable inference could be drawn that the question becomes one of law for the courts to decide, *Tyler v. Jensen*, 75 Wyo. 249, 295 P.2d 742, 749; 57 C.J.S. Master and Servant § 617, p. 408; and it is only when the conduct of an employee is shown clearly to be either within or beyond the scope of his employment that such determination can be made as a matter of law. *Sun Land & Cattle Co. v. Brown*, Wyo., 394 P.2d 387, 390."

In *Stockgrowers' Bank of Wheatland v. Gray*, 24 Wyo. 18, 154 P. 593 (1916), and notwithstanding the terms of a contract between the bank and its builder in which the parties provided that the builder's status was that of an independent contractor, and where it appeared that the bank actually retained control of the details of the work over which liability was sought to. be established, we held:

" * * * [T]he bank did in fact retain control and supervision of the work, any negligence resulting in injury would be imputable to the bank." 154 P. at 596.

In resolving the question which asks whether Texaco retained the right to con-

trol the details of the work where liability is sought to be established, we must do two things: (1) decide where it is that liability is sought to be established, and (2) apply the relevant evidence which is the most favorable to the appellant and give it every favorable inference. *Combined Insurance Company of America v. Sinclair*, 584 P.2d at 1042 n. 2, citing *Rissler and McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977), and *Kahler v. Martin*, Wyo., 570 P.2d 720 (1977).

*Where Is the Liability That Is Sought To Be Established?*

In May of 1933 this court published *Stockwell v. Morris*, 46 Wyo. 1, 22 P.2d 189, in which the issue was whether a Maytag washing machine salesman was, when he had an accident on the highway injuring another, a servant of Maytag under the doctrine of respondeat superior. It is in this opinion that Justice Blume established the rule that right of control is the test and, in ascertaining whether this right is present, the courts must direct their attention to

" * * * that portion of the employment directly connected with the factor by reason of which liability is sought to be established. It would not do, we think, to pursue the shadow, leaving the substance out of consideration." 22 P.2d at 193.

Justice Blume called up the statement from Tentative Draft No. 5 of the Restatement of the Law of Agency, p. 100, as one of the best expressions of the rule:

" 'A principal employing another to achieve a result but not controlling the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus the principal is not responsible for the negligent physical conduct of an attorney, a broker, a factor or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that

right to control physical details as to the manner of performance, which is characteristic of the relation of master and servant, that the person in whose service the act is done, becomes subject to liability for the physical conduct of the actor.' " 22 P.2d at 194.

In reaching a decision in *Stockwell*, Justice Blume analyzed the evidence for purposes of deciding whether Maytag had retained the right to control the manner its agent actually operated the vehicle—and found that no such control was retained by the principal—and none could be implied. In arriving at this conclusion, this court looked at the contract between Maytag and Morris and found no provision for retention of the right to control the manner in which Morris operated the vehicle and that the other evidence did not reveal any basis from which it could be inferred that Maytag had retained such right of control.

In the case at bar, we have no need to rely upon inference to identify the area where the issue must be resolved. Paragraph 3.21 of the contract between Brinkerhoff and Texaco and the testimony of the Texaco field supervisor make clear that, while Brinkerhoff remained an independent contractor as to the drilling of the well under ¶ 17.1 and other provisions of the agreement, Texaco retained and exercised the right of detailed supervisory control of the safety features of the contract which is the area where liability was sought to be established in this case.

It is my contention that the majority misidentify the liability area over which Texaco retained control and the right to control the details of the work relationship. The majority look to the ¶ 17, independent-contractor provision of the contract to support the conclusion that Brinkerhoff is an independent contractor. Having quoted ¶ 17, "Independent Contractor," the majority say:

"In *Parsons v. Amerada Hess Corporation*, 422 F.2d 610, 611 (10th Cir.1970), the court stated: 'While the contract is not conclusive evidence of the legal relationship of the parties, it is to be sure cogent evidence of it.' In this case, Texaco's supervisory role was result oriented so as to insure satisfactory performance of the work. Such a role is common between owners and independent contractors. Texaco did not retain the power to control the activities of the driller, Brinkerhoff-Signal.

" ' * * * [T]he owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, [citation] the right to stop the work, [citation] the right to make suggestions or recommendations as to details of the work, [citation] the right to prescribe alterations or deviations in the work, [citation]—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship. * * *' *McDonald v. Shell Oil Company*, 44 Cal.2d 785, 285 P.2d 902, 904 (1955)." 584 P.2d at 1042.

I would disagree with the majority's application of these and other quoted and cited "independent contractor" case holdings, for the reason that Texaco, in the case at bar, *did* retain control and right of control over the safety aspects of the drilling operation—these were not the " 'broad general power[s]' " contemplated by *McDonald v. Shell Oil Company*, 44 Cal.2d 785, 285 P.2d 902 (1955); *Sword v. Gulf Oil Corporation*, supra; *Hurst v. Gulf Oil Corporation*, supra, and the retained control does not fall within the classification of " 'the right to inspect * * *, the right to stop the work * * *, the right to make suggestions or recommendations as to the details of the work' " and " 'the right to prescribe alterations or deviations in the work' " that are contemplated in *McDonald v. Shell Oil Company*. In the case at bar, we are talking about the retention of control of the details of the *safety features* including Texaco's right to shut down operation if Brinkerhoff does not comply with them. We are *not* talking about the over-

all drilling contractual obligations of the parties, and the majority opinion does not even attempt to address this compelling and overriding question.

It is difficult to contemplate, but nonetheless true, that the majority have chosen to completely ignore a case which is, in every relevant aspect, *exactly* like the one at bar, which case was tried before the United States District Court of Wyoming, where an independent-contractor relationship was found to exist and the Tenth Circuit Court of Appeals reversed, holding that, under a contract and facts which are identical with those at bar, there was an issue of fact as to whether the driller was a servant or an independent contractor.

In *Holdaway v. Amoco Production Company*, 751 F.2d 1129 (10th Cir.1984) (the style of the case in the Tenth Circuit Court of Appeals), reversing *Holdaway v. Gustanson*, 546 F.Supp. 231 (D.C.Wyo. 1982), a motorman who was employed by the driller, CWS, was injured and sued Amoco, who had contracted for the drilling of the well. Plaintiff claimed various acts of negligence, including failure to correct safety hazards. Amoco contended that CWS was an independent contractor and therefore it had no liability to the contractor's employees. The United States District Court for Wyoming granted summary judgment. The Tenth Circuit reversed, holding that the case was not one which qualified for summary judgment. The court said:

> "The essential question in this case is whether CWS was an independent contractor of Amoco. This question turns on whether Amoco had in fact retained sufficient control over CWS's operations that it could not in law shield itself from liability for plaintiff's injury.
>
> "There appears to be some question over whether the contract as written reserves such a right to Amoco. Regardless of whether the contract purports to make CWS an independent contractor, however, it will not protect Amoco if it may be inferred from facts and circumstances revealed by the evidence that the real relationship between Amoco and CWS was that of master and servant. *McReynolds v. Oklahoma Turnpike Authority*, 291 P.2d 341, 345 (Okla.1955); *Ulibarri Landscaping Material, Inc. v. Colony Materials Inc.*, 97 N.M. 266, 639 P.2d 75, 78 (1981); see also *Stockwell v. Morris*, 46 Wyo. 1, 22 P.2d 189 (1933) (issue in determining whether master-servant relationship exists is *control or right to control*). The extent to which Amoco actually retained the right to control is primarily a question of fact for the jury. *Combined Insurance Co. of America v. Sinclair*, 584 P.2d 1034, 1042 (Wyo.1978).

> "Deposition evidence in the hearing for summary judgment clearly creates an issue of fact on the question of Amoco's control over the claimed hazardous situation that resulted in the plaintiff's injury. The following excerpt from the deposition of an Amoco employee, which was quoted to the judge during the hearing, is sufficient to create a factual question:

> " 'Q If you should observe on the well site violations of any rules, regulations, or laws that you know about, what procedure would you employ, what would you do about it?
>
> " 'A If it was along the line of safety of somebody working on there, I would tell them directly at the time. If there was a matter of safety of someone working on there. But if they was doing something unsafe, I'd go through the pusher, and if the pusher wasn't there I would talk to the driller on the job at the time.
>
> " 'Q What would you do if you observed an unsafe condition on or about the drilling rig?
>
> " 'A Get it corrected immediately.
>
> " 'Q How would you accomplish that?
>
> " 'A Just go through the tool pusher, and if he wasn't around, go to the driller.
>
> " 'Q You wouldn't shut down operations or anything of that nature, would you?

" 'A We'd shut down operations if it was necessary, yes, until it was corrected.

" 'Q You have the authority to shut down operations—

" 'A Oh, yeah.'

"Record, vol 6, at 22. Mr. Bates, the Amoco employee, clearly felt he had the right and the responsibility to correct unsafe conditions on the CWS drilling rig.

"The court below ruled that the contract did not give Amoco the right to control, but ignored the factual question, legitimately raised by the Bates deposition, of whether Amoco had in fact retained the right to control notwithstanding the contractual language. Plaintiff has carried his burden of showing that a genuine issue of fact exists on the question of Amoco's control, and summary judgment on this issue was improper.

"The decision is reversed and the case is remanded." 751 F.2d at 1130–1131.

Before concluding, I would observe that, in my opinion, the majority erroneously find solace in *Simpson v. Home Petroleum Corporation,* 770 F.2d 499 (5th Cir.1985). Simpson was an appeal from a jury verdict in which the appellate court held that—under the facts of the case and, under the applicable law pertaining to burden of proof and persuasion—a trial court judgment upholding the jury's finding that an independent-contractor relationship was present should not be reversed. The issue before the appellate court was, therefore, whether the trial court had properly instructed the jury upon the parties' burden-of-proof and persuasion obligations as those burdens pertained to proving to and persuading the jury on the issue of master-servant and/or independent contractor. Therefore, Simpson—a jury-decision appeal—does not have anything to do with the case before this court—a summary-judgment decision appeal—except that it announces general rules of employee-employer and independent-contractor law with which I have no quarrel, and the precedential law of this court has no quarrel.

Based upon these authorities which clearly establish that, under the facts of record here, a genuine issue of material fact exists on the issue of Texaco's control and right of control over the safety aspects of the agreement between Texaco and Brinkerhoff, the summary judgment was erroneously granted and I would have reversed the trial court's summary judgment for Texaco.